JUDGE GOFER
delivered the opinion oe the court.
September 5, 1868, tbe Phoenix Mutual Life Insurance Co., of Hartford, Conn., issued to Joseph B. Montgomery a policy of insurance insuring his life in the sum of $10,000. The policy is of that class usually called non - forfeitable ten-year endowment policies, and was payable when the assured should attain the age of seventy years, or, in case of his death before that time, within ninety days after due notice and proof thereof. '
The annual premium was $524.80, payable one half in cash and the residue in notes, due one year after date, and in case of any indebtedness of the assured to the company on account of the policy at the time it became payable, such indebtedness was to be deducted from the amount due thereon.
The policy also contained the following provisions, viz:
“It being understood and agreed that if, after the receipt by this company of not less than two or more annual premiums, this policy should cease in consequence of the non-payment of premiums, then, upon a surrender of the same, provided such surrender is made to the company within twelve months from the time of such ceasing, a new policy will be issued for the value acquired under the old one,.subject to any notes that may have been received on account of premiums; that is to say, if payments for two years shall have been made it will issue a policy for two tenths of the sum originally insured; if for three years, for three tenths, and in the same proportion'for any number of payments, without subjecting the assured to any subsequent charge except the interest annually in advance on all premium-notes remaining unpaid on this policy.
“This policy is issued and accepted by the assured upon the following express conditions and agreements:
“First. If the said Joseph B. Montgomery shall at any time during the continuance of this policy, without the con *56 sent of this company previously obtained in writing, visit any part of the western hemisphere lying between the tropics, etc., . . . or if 'any of the declarations made in the application for this policy, upon the faith of which this policy is issued, shall be found in any respect untrue, then, and in every such case, this policy shall be null and void.
“ Secondly. If said premiums shall not be paid at the office of the company, in the city of Hartford, Conn., or to an agent of the company, on his producing a receipt signed by the president or secretary on or before the date above mentioned, then in every such case the said company shall not be liable for the payment of the whole sum assured, but only for a part thereof, proportionate with the annual payments made as above specified, and this policy shall cease and determine.
“ Thirdly. In every case where this policy shall cease and determine, or become null and void for any cause other than the non-payment of premiums, then all payments thereon shall be forfeited to this company.”
This policy was subsequently exchanged for another in all respects like it, except that the new policy was for the benefit of Montgomery’s wife.
The premiums were paid for the years 1868, 1869, 1870, and 1871, and the interest on the premium-notes was also paid up to the latter date.
"When the premium for 1872 fell due, Montgomery paid thereon, in cash, $200, and executed to the company the following note and received a renewal receipt:
Louisville, September 5, 1872.
On the 24th of December, ... I promise to pay to the order of the Phoenix Insurance Company, or their agent, at the Citizens Bank, $129.40, being part of the cash payment of the premium for 1872 on policy No. 29,371, issued by said company, the whole being receipted in said renewal. And *57 it is hereby understood and agreed that if the amount of this note shall not be paid when due, the said policy shall be null and void. Signed, J. B. Montgomery.
This note was made up of $62.40, balance of cash part of the premium; $62.88 interest in advance on premium-notes; and $4.12 for interest on the first two sums from September 5, to December 24, the time of the maturity of the note.
No note was given in 1872 for the remaining half of the premium for that year, because it was not the custom of the company to take premium-notes after four years from the date of the policy, the dividends being supposed to be sufficient after that time to meet one half the premium..
The note for $129.40 was not paid at maturity, nor has it been paid since. No demand of payment was ever made, nor did the company offer to' return the note or the $200 paid in cash September 5, or any part of it. No more premiums were paid or tendered, and September 21, 1875, Montgomery died without (as we shall assume) having surrendered the policy or demanded a new one.
This suit in equity was instituted by Mrs. Montgomery on the policy to recover five tenths of the amount thereof, and her petition having been dismissed, she prosecutes this appeal. *
Three questions are presented for decision which may be stated thus:
1. Did the failure to surrender, or to offer to surrender the policy within twelve months after default in the payment of premiums, release the company from any further liability on the policy, for any part of the sum insured?
2. Was the^policy forfeited by the failure to pay the note for $129.40 when due?
3. If the foregoing questions be answered in the negative, how much is the appellant entitled to recover?
*58 Prior to September 5, 1872, the insured had paid four full annual premiums, and on that day had a right to demand a paid-up policy for $4,000, not ex gratia, as appellee’s counsel seem to intimate, but because it had been paid for. Each annual premium paid for carrying the policy for the current year and for $1,000 of paid-up insurance, and at the end of four years a paid-up policy was as certainly paid for, at the contract price, as the four years of current insurance. If, as we assume for the present, the premium for the year commencing September 5, 1872, was not paid, the stipulation is that the “ company shall not be liable for the payment of the whole sum assured, but only for a part thereof proportionate to the annual payments made as above specified, and this policy shall cease and determine.”
This is in effect a covenant to pay according to the terms of the policy $4,000 in case four annual premiums should be paid, and the policy should then cease and determine on account of the non-payment of the fifth premium. But counsel seek to break the force of this view of the subject by arguing that no recovery can in any event be had on the original policy for a part of the sum insured. “ To say that a proportionate recovery can be had upon the original policy,” say they, “ would run counter to the very second condition which the appellant invokes as a covenant made in her favor, for that condition closes with these words, ‘and this policy shall cease and determine.”’ True the policy ceased and determined, but it did not then cease to bind the company to pay a proportionate part of the sum assured. It ceased to be a policy for $10,000. The right to pay premiums and to continue it in force was gone, but to say that it then ceased to be binding on the company for any purpose is in plain disregard not only of the stipulation to pay a proportionate sum, but also of the provision that a new policy would “be issued for the value acquired under the old one.”
*59 If, as counsel claim, the old policy so far ceased and determined that a suit could not be prosecuted upon it for a proportion of the sum insured, why did it not for the same reason so cease and determine that no suit could be maintained on the covenant to issue a new policy? The words “this policy shall cease and determine ” apply as well to the one covenant as to the, other, and if the argument drawn from them proves •any thing, it proves that the covenant to issue a new policy, and the covenant to pay a proportionate part of the sum assured in case default was made in paying premiums after two had been made, amount to nothing, and that the policy became null and void just as if these covenants had been omitted.
If no action can be maintained on the old policy to recover a proportionate part of the sum insured because the policy ceased and determined when default was made in the payment of premiums, what would have been the result if the insured had died within the year next succeeding such default, and without surrendering the old policy? Obviously no new policy could have been issued in that case, and it will not do to say that the policy having ceased and determined in the lifetime of the insured would have been resurrected by his death.
The only rational and consistent construction of the words “this policy shall cease and determine” is that already suggested, viz. that it should then cease to be a policy for more than a sum “ proportionate with the annual payments made.”
Counsel also argue that the words “as above specified” in the second condition were intended to apply as well to the grounds of the company’s liability as to the amount for which it should be liable. In other words, that the meaning is that the company will pay a proportionate amount provided the old policy is surrendered within twelve months after default in the payment of premiums. If such had been the meaning *60 language much more appropriate could, and no doubt would, have been employed. , If it had read “on the terms above specified ” no doubt could have been entertained that it was the intention of the parties that the proportionate payment should be made only in case the old policy was surrendered within twelve months.
Thus construed the terms of the contract gave the assured the option to take either of two courses: 1. To surrender the-old policy and take a paid-up policy subject to the outstanding premium-notes for as many tenths of the whole sum insured as there had been annual payments of premiums; and, 2. To hold on to the old policy until the death of the insured or until it became payable by its own terms.
In case the latter course should be chosen the outstanding premium-notes might be collected by the company at once. By their terms they were due and payable, and liability to pay them could not be avoided by failing to surrender the old policy.
If, on the other hand, the assured chose the first alternative, the new policy was to be issued subject “to any notes that may have been received on account of premiums,” and the interest was to be paid on such notes annually, in advance, which shows the notes were not, in that case, to be paid, but were to remain a lien on the policy.
But if we could adopt the construction of the policy insisted upon by appellee’s counsel we could not sanction the conclusion reached by them, that in consequence of the failure to surrender the old policy within twelve months after default in the payment of premiums the company has ceased to be liable for any part of the sum insured.
Time is not generally of the essence of contracts. (Story’s Equity, sec. 776.) It may be so when the contract is executory on both sides, or when the nature of the transaction or the stipulation of the parties shows it was so intended by them.
*61 But when the defendant has received the entire consideration for performance on his part, and has no other defense except that the plaintiff did not come within the stipulated time to demand performance, we are not acquainted with any authority or legal principle upon which such a defense can be upheld in a court of equity.
If, for any reason, the defendant has become' unable to perform his agreement, or performance would be more difficult or onerous at the time of the demand than it would have been at the time stipulated, there might be plausibility in such a defense, and a court of equity would no doubt either deny all relief to .the plaintiff or grant relief upon terms that would compensate the defendant for the additional burden resulting from the plaintiff’s delay. But nothing of the kind is pretended in this case. The proposition upon which this branch of the company’s defense rests is this, and nothing more. It is admitted that the assured paid for a paid-up policy for $4,000, and that if the old policy had been surrendered at any time between September 5, 1872, and September 5, 1873, the company would have been bound to issue a new policy for that sum, and because the old policy was not surrendered within that time that the assured has lost the benefit of $4,000 of paid-up insurance.
Suppose instead of buying and paying for $4,000 of insurance to be secured by a policy to be issued- provided it was applied for within twelve months, the assured had purchased and paid for a piece of real estate of like value, and had accepted the vendor’s covenant to convey the title and surrender possession of the property provided a deed was demanded within twelve months, what enlightened jurist would hesitate to hold insufficient a defense which averred only that the plaintiff did not demand a deed and the surrender of possession within the time stipulated? The case supposed does not differ in principle from the case at bar.
*62 Counsel cite several cases which they suppose establish, or tend to establish, a different construction.
Gates v. Insurance Co., Superior Ct. Cin., 5 Big. Ins. Repts. 467, was an action to recover money paid for premiums on a life policy. The plaintiff alleged that in December, 1867, he insured his life in the defendant’s company in the sum of $2,000, for an annual premium of $175.94, which premium he' paid in 1867 and 1868; that by the terms of the policy he became entitled by reason of said payments to a paid-up policy for $456.64; and that upon demand for such paid-up policy it was refused.
The policy in its body was styled “this non-forfeiting policy,” but it stipulated that in case the premium was not paid on the day designated the policy should be void.
Subsequently, but without date, there was indorsed on the policy, and signed by the secretary, the following: “ After two annual premiums have been paid, and while it continues in force, this policy will be exchanged for a paid-up policy as large as the paid-up premiums will purchase.” The court trying the cause instructed the jury to find for the company, and Gates appealed.
It does not appear from the report of the case whether the demand for a paid-up policy was made before or after default was made in the payment of the annual premium.
By the term's of the indorsement on the policy the agreement was that after two premiums had been paid, and while it (the policy) continued in force, it would be exchanged for a paid-up policy. Unless demand for the paid-up policy was made before the third premium fell due, that case and this are substantially alike, and in that case it was held that if the indorsement was made before default in the payment of premiums, and was authorized by the company, the assured had a right to recover, and the judgment was reversed. If the demand for a new policy was made before default, i. e. while the *63 policy was in force, the cases are unlike, and because of the absence of this material fact that case is of no value as a precedent in this. It seems to us, however, that the question involved here did not arise in that case, and that for the reasons given by the Supreme Court of Illinois in Insurance Co. v. Baker, post, the plaintiff had no right in any event to recover back the premiums paid.
In Moses v. Ins. Co., 50 Ga. 196, 5 Big. 61, the court held that the number of premiums required to entitle the assured to a paid-up policy had not been paid, and decided against them on that ground alone.
Smith v. Ins. Co., 4 Big. 421, District Court of Philadelphia, Schumacher v. Ins. Co., ib. and 3 Ins. L. J. 455, U. S. Circuit Court, E. D. Missouri, seem to have been upon policies similar to this in the point under consideration, but no opinion was delivered in either case, and the facts are not fully stated in either. In the former no intimation is given of the grounds of the decision. In the latter the fact, that the old policy had not been sux’rendei’ed, is stated as one of the grounds of the decision, but without a knowledge of the issues made by the pleadings, or a more extended statement of the case than is given in the report, it is impossible to regard the opinion of the learned circuit judge as a decisive authority; and moreover that was an action at law.
Phœnix Ins. Co. v. Baker, S. C. Ills., Insurance L. J. March, 1878, was an action for money had and received to recover back money paid as premiums on a life-policy.
The theory of the plaintiff was that the company having refused, upon what he claimed was a proper demand, to issue a paid-up policy, was guilty of a breach of the terms of the agreement, and that he might elect to rescind the contract'and thereupon recover back the money paid in premiums. The court said the money paid was mainly for current insurance; that the company had carried the risk while the policy re *64 mained in force, and to that extent had executed the contract. The assured had enjoyed that part of the consideration, and consequently could not elect to rescind, and of course the action failed. This was the only point decided in the case.
The court spoke of the surrender of the old policy as “ the condition precedent” to the issuing of a paid-up policy, and intimated that damages for refusing to issue it could not be recovered unless “the condition precedent” had been performed. All the court said on this point was obiter dictum, and besides, it is worthy of remark that the court did not say that the surrender could not be effectively made after the time stipulated in the policy.
Several Kentucky cases are also supposed to establish the doctrine that when time is fixed within which demand shall be made, time becomes essential. (Page v. Hughes, 2 B. Mon. 439; Magoffin v. Holt, 1 Duv. 95; Chandler v. Robertson, 9 Dana, 291; and Souseley v. Burns, 10 Bush, 87.)
The former two were suits in equity, the first by the vendee and the latter by the vendor to compel the performance of contracts for the sale of real estate. In the first, a lessee had the option to purchase the leased premises during the continuance of the leasé at a stipulated price. In the latter, Magoffin sold certain lands to Holt, and agreed that if, at the expiration of three years, Holt desired to sell the land he would purchase it at an agreed price.
It was held in each case that time was of the essence of the contract. In the former the party having the option was held to be excused by the circumstances from a strict compliance with the terms of the contract, and specific performance was decreed in his favor. In the latter no excuse was offered for the failure to give notice, within the agreed time, of a desire to sell, and a decree was refused.
This character of contracts wants mutuality, and it would be obviously unjust to allow the party not bound to delay without *65 excuse beyond the stipulated time to make the contract binding upon himself by tendering performance on his part. And it is mainly if not solely upon this ground that time is considered as of the essence of such contracts.
The- other cases cited were actions to recover damages for breaches of executory contracts for the sale and delivery of personal property, in which it was held that the party complaining must show his readiness and ability to perform his part of the contract at the time stipulated. But no case is cited, and we think none can be found, in which it has been held that when the party suing has performed his part of the agreement before the time appointed for performance by the defendant, that the plaintiff could not recover because he was in default as to time in making his demand.
The case of an ordinary life policy, with premiums payable annually in advance, is entirely unlike this case. In such cases the assured is not bound to pay the premiums. He may do so or not at his pleasure. The company, however, has no election, but is bound to receive the premium if tendered in time, and renew the policy, or rather continue it in force. The consideration for further insurance is unpaid — the contract is ex-ecutory on both sides. By its own terms it expires, unless the assured elects to continue it in force and pays the consideration for such continuation. It is á misnomer to call this a forfeiture.
The consideration for previous premiums was received and enjoyed in the insurance for the time for which it was paid. But in this case the consideration for a paid-up policy has been fully paid, and although the insured enjoyed the benefit of current insurance for the years in which the policy was in force for the full amount, that was not all that was paid for. The premiums by express convention paid for both current insurance and a paid-up policy, and now to deny to the assured the benefit of a paid-up policy because the old one was not. *66 surrendered in time, is, in the strictest and most obnoxious sense, a forfeiture. Such a claim is without support in reason, justice, or authority, and can not be sanctioned in a court of equity.
Was the policy forfeited by the non-payment of the note of September 5, 1872, for $129.40? We think not. As we have already seen the right to the ultimate payment of a proportionate part of the sum assured was acquired before the note was executed, and would not have been forfeited by a failure to pay any part of the premium falling due in September, 1872. Can the assured be in a worse condition after paying $200 on the premium then due and executing a note for the residue, than if no payment had been made and no note executed? If so it must be simply because the note stipulated that unless it was paid at maturity the policy should be void. The default admits of certain compensation. The ultimate payment of the note was by the terms of the policy amply secured, and the stipulation for the forfeiture of the policy if the note was not paid at maturity must be considered as having been intended alone as a penalty to secure prompt payment, and as the default was only in time, and as all that is due of the note was and is amply secured, a case is presented in which relief ought to be afforded. (St. Louis M. L. Ins. Co. v. Grigsby, 10 Bush, 310.)
Grigsby’s case was stronger against the assured than this. The stipulation for forfeiture for non-payment of interest was contained in the policy. In this case the stipulation is introduced for the first time in a note executed after the right to a paid-up policy for $4,000 had been paid for and secured.
The doctrine announced by this court in Grigsby’s case has been approved and applied by the Supreme Court of Iowa, in Ohde v. N. W. Ins. Co., 5 Big. 145, and by the Superior Court of Indianapolis, in Littie v. N. W. M. L. Ins. Co., ibid. 137; and denied by the St. Louis Court of Appeals, in Russum v. *67 St. Louis M. L. Ins. Co., ibid. 243, and by the Circuit Court of the U. S. for the eastern district of Tennessee, in Anderson v. St. Louis M. L. Ins. Co., ibid. 527.
The ground upon which these latter decisions proceed is that the regular and prompt payment of interest on premium-notes is essential to the system of taking such notes at all; and it is remarked in the latter case that the learned judge failed to see why courts should apply to policies of insurance rules of construction different from those applicable to ordinary instruments.
It was on account of the same inability on the part of this court that it was decided in Grigsby’s case that the forfeiture for the non-payment of interest was merely a penalty to se.cure prompt payment, and that a court of equity ought to relieve against it.
As already said, the cessation of a policy because of the non-payment of premiums is in no sense a forfeiture. Payment of premiums is a condition precedent to the continuation of the risk, and unless it be performed the policy ceases. Nothing is forfeited, and courts of equity do not now assume to relieve a party against the consequences of the non-performance of such a condition.
“ Wherever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed- only as accessory, and therefore as intended only to secure the due performance thereof, or the damage really incurred by the non-performance. In every such case the true test by which to ascertain whether relief can be had in equity, is to consider whether compensation can be made or not.” (Story’s Equity, sec. 1314.)
That the stipulation for forfeiture upon the failure to pay interest at maturity is intended to secure prompt payment, and that alone, is conceded in those cases, and the-necessity for the *68 stipulation for the accomplishment of that object is dwelt upon in both. But while citing the foregoing quotation from Story the court, in the latter case, proceeds to quote from section 1323, same author, as follows: “The doctrine seems now to be asserted in England, that, in all cases of forfeiture for the breach of any covenant, other than a covenant to pay rent, no relief ought to be granted in equity, unless upon the ground of accident, mistake, fraud, or surprise, although the breach is capable of a just compensation.” But Judge Story, after making the foregoing statement of the modern doctrine in England, proceeds in the same section to say: “Whether this narrow limitation of the doctrine is defensible upon the original principles which seem to have guided courts of equity in interfering in cases of penalties and forfeitures, namely, that they are to be treated as mere securities for the performance of stipulated acts, and not strictly as conditions to limit and determine rights and estates, ex rigore juris, according to the common law, may perhaps admit of serious question. But in the present state of the authorities this restricted doctrine may be affirmed to possess a general, if not a conclusive weight in the English courts of equity. Perhaps in America the doctrine would be received with more hesitation.”
No American case is cited, and we are not aware of any, in which the English doctrine has been approved, unless the cases of Russum and Anderson can be so regarded.
The distinction between forfeitures and conditions precedent is obvious and well understood. In the former, rights already acquired or existing are divested; in the latter, the right never attaches until the condition is performed. In an ordinary contract of life insurance (such as Tait v. Ins. Co., 4 Big. 479, referred to in Anderson’s case as an authority for refusing to relieve against a forfeiture for the non-payment of interest on premium-notes), in consideration of the payment of one annual premium the insurer promises to pay a given sum in *69 case of the death of the insured during the ensuing twelve’ months, and in addition, to continue the risk from year to year during the life of the insured, provided the annual premium is paid each year on the day stipulated. Payment on or before that day is a condition precedent to continuing the policy in force, and unless payment be so made the insurer never becomes bound to assume the risk for a single moment of the ensuing year, and this not upon any principle applicable to contracts of insurance alone, but upon principles as old as equity jurisprudence itself.
But when, as in this case, the insured has acquired a right to a proportionate part of the sum assured, which is not subject to forfeiture for the non-payment of subsequent premiums, and the assured being indulged in the payment of a subsequent premium, executes a note therefor with a stipulation that the policy shall be forfeited if the note be not paid at maturity, this stipulation, if it operates at all, will defeat a preexisting right, and is a forfeiture; and as the only object of such a stipulation is to secure the prompt payment of the note, and as the breach of the agreement to pay at maturity can be compensated, the case comes precisely within Mr. Story’s test as to the propriety of the interference of the chancellor to relieve against forfeitures. (Sec. 1344, supra.)
3. Having reached the conclusion that the assured has a right to recover, the only remaining question is whether she shall have judgment for $4,000 or for $5,000, subject in either event to the notes held by the company and the accrued interest thereon.
The whole cash premium was not paid September 5, 1872.
The company might have refused to accept less than one half the entire premium for the ensuing year, and if it had done so the policy would then have ceased and determined, and the assured would have been entitled to only four tenths of the policy. The company chose not to exercise that right, *70 but instead accepted a cash payment of $200, and the note of the insured for the balance of the cash premium and the interest on the premium - notes, and issued a renewal receipt. This the company certainly had a right to do, and was a waiver of the condition precedent (Harris v. Troup, 8 Paige, 425), and the policy was continued in force for another year, unless that result was prevented by the stipulation in the note that if it was not paid the policy should become null and void.
We have seen that this stipulation did not avoid the whole policy, and we are now to decide whether it avoided it for the year commencing September 5, 1872.
Having by accepting the payment of $200 in money and receiving the note waived the performance of the condition precedent, and issued a renewal certificate, the policy was continued in force, so that it will not be disputed that if the insured had died between that time and the maturity of the note the whole sum assured would have been payable. Nor will it be disputed that, if the note had been paid at maturity and the insured had died after that within the year, the company would have been liable for the whole amount.
. The money paid was sufficient to carry the policy “beyond the maturity of the note, and if it be held that the insurance for the year became void at the maturity of the note, then the excess of the money over the cost of carrying the policy to the maturity of the note was forfeited and lost. In other words, by the failure to pay the note the assured lost not only the benefit of insurance for the balance- of the year, but also the right to an additional $1,000 of paid-up insurance through the operation of the forfeiture.
This comes within the principle already announced, that a right vested before and independent of the breach of a condition of forfeiture will not be allowed in a court of equity to be forfeited if compensation can be made. (Story’s' Equity, 1320.)
*71 Beside this, we think that the performance of the condition precedent to continuing the policy in force beyond the 5th of September having been waived, and the note and partial payment received, the company was bound, if it intended to insist on the stipulation in the note to avoid the policy, to return the note and so much of the $200 as was in excess of the interest due on the premium-notes and the cost, at the contract rate, of carrying the policy until the maturity of the note.
The company had no right in law or morals to speculate on the chances that the insured would not die within the year. Upon the theory of its counsel it, by retaining the money and notes, was in a position to say, if the insured did not die within a year, that he was insured, and the money and note had been earned, but if he died, to say that he had not been insured.
Can it be doubted that, if the insured had lived through the year and been sued on the note, the company could have recovered? Could he have successfully pleaded that the policy became void by the non-payment of the note, and that consequently the consideration had failed ? Clearly he could not. The condition in the note was not inserted for his benefit, but for the benefit of the company, and the company could waive it and insist upon payment, but in order to do so it must waive the forfeiture. The assured was bound, at the election of the company, to pay the note, and the law, for the same reason that it requires prompt payment of premiums, required it to decide promptly what course it would take.
There was a want of mutuality in the obligation of the contract. The company, in the view in which we are now considering the subject, might elect to forfeit the policy for the year, but if it did so it had no right to the note or to the excess of the $200 paid on that year’s premium over and above the cost of carrying the policy until the maturity of the note. The assured, however, had no election. If the company chose to insist upon the payment of the note, there was *72 no legal mode in which payment could be avoided. What, then, was the duty oh the company in view of the want of mutuality of right and obligation ?
Had it a right to remain silent and retain the money it had received in part payment of that year’s premium, and hold the insured bound on the note until the year had expired, and then to elect whether it would treat the non-payment of the note as a forfeiture of the policy? If so, the comjiany occupied the position so much deprecated in Russum’s and Anderson’s cases of wishing to take the chances of gain without being willing to incur the hazard of loss, and could make its election according to the event at the end of the year.
The non-payment of the note at maturity did not ipso facto render either the note or policy void. (2 Parsons on Contracts, -ed., 677; Malins v. Freeman, 33 E. C., 388; Chitty on Contracts, 11 Am. ed., 1092.)
The stipulation for forfeiture was inserted in the note for the benefit of the company, and if valid for any purpose, vested in the company the right to elect whether it would abandon the contract on account of the default, or waive the default and enforce the contract. (Chitty on Contracts, 1092.)
But as the rights and obligations of the parties were not mutual — as the company was to be bound or not as it might elect — it was bound to elect promptly, and had no legal or equitable' right, by delaying, to speculate on contingencies that might arise in the meantime. (Story on Contracts, fifth ed., sec. 1337; Chitty on Contracts, 1092; Minor v. Kelley, 5 Mon. 272; Page v. Hughes, 2 B. Mon. 439; Magoffin v. Holt, 1 Duv. 95.)
We are aware that ordinarily the mere silence of a party will not amount to a waiver of his right to insist on the benefit of a condition inserted in the contract for his benefit. (Story on Contracts, sec. 48.) But this rule does not apply when, if he elects to rescind, it will be his duty to do some act- *73 to place the parties in statu quo, nor when the nature of the contract is such that his course may be influenced by subsequent uncertain events. ■
As already remarked, the company could not retain the money and note from December 24th until the succeeding 5th of September, and by remaining silent as to the course it intended to pursue be in a position, if the insured died within the year, to say that the policy was forfeited at the maturity of the note in consequence of its non-payment, and in case he survived to be able to say he had been all the time insured, and that the entire premium for that year had been earned.
We therefore conclude that, even if the stipulation in the note for the forfeiture of the policy could under any circumstances have been taken advantage of to defeat the policy for the residue of the year, it could only have been done by promptly returning the note, and so much of the $200 in cash paid on the premium for that year as was in excess of the cost of carrying the policy to the time of the maturity of the note, or by returning the note and crediting the excess of the money on the outstanding premium-notes of the preceding years; and we are consequently also of the opinion that the premium for 1872-3 must be deemed to have been fully paid, and that the assured is entitled to judgment for five tenths of the amount of the policy, with interest from a period sixty days subsequent to the time when proof of the death of the insured was furnished to the company, subject, however, to a deduction of the sum then due on all the notes of the insured held by the company, and which were given on account of this policy.
In reaching this conclusion we have not overlooked the fact that we said in Grigsby’s case that “ where, as matter of favor to the insured, credit is extended him for some portion of the cash premium, the failure to pay the note representing such portion is regarded as a failure to pay the premium, and the policy will be forfeited.”
*74 In that case no such question arose for decision, as the succeeding sentence in that opinion will show. That question not being involved in the decision of the case was not carefully considered, and what was said was introduced merely for the purpose of distinguishing the case being decided from cases in which the question was whether the policy was forfeited by the non-payment of notes given for cash premiums.
Judgment reversed, and cause remanded with directions to render judgment for the appellant in accordance with this opinion.