Northwestern Mutual Life Ins. Co. v. Barbour, &c.

CASE 78—PETITION EQUITY—December 1.

# Northwestern Mutual Life Ins. Co. v. Barbour, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

PAID-UP INSURANCE—FORFEITURE—TIME OF ESSENCE OF CONTRACT.— Where a policy of insurance provides that upon default of payment of premium the insurance shall cease, but that the insured shall be entitled to a paid-up policy for a certain proportion of the premiums already paid, provided all his indebtedness to the company shall be paid, and the policy surrendered within six months from the time of default of payment of premium, time is of the essence of the contract, and the insured is not entitled to the paid-up insurance unless the indebtedness is paid and the policy is surrendered within the time stipulated. It is a case where the insurance has, by the default of the insured, wholly determined, and the privilege is given him of acquiring a new right, provided he does certain things within a certain time, and is not like a case where the company has received the entire consideration for performance on its part, and the insured merely fails to demand performance within a stipulated time.

BARNETT, MILLER & BARNETT FOR APPELLANT.

1. Each policy requires as a *condition precedent* that it must be surrendered within six months after default in payment of premiums, *freed of indebtedness* to the company, before the right to a paid-up policy can accrue. This condition precedent was never performed.

Neither the Grigsby policy (10 Bush, 310), the Montgomery policy (14 Bush, 51), the Johnson policy (79 Ky., 403), the Fort policy (82 Ky., 269), nor the Montague policy (84 Ky., 659) contained a condition precedent to the accrual of the right. Such conditions are contract rights and will be upheld. (Encyclopædia Britannica, vol. 13, p. 178; Bouvier's Law Dictionary, "Condition;" Robinson v. Duvall, 79 Ky., 85; Grigsby v. St. Louis M. L. Ins. Co., 10 Bush, 314; Montgomery v. Phœnix M. L. Ins. Co., 14 Bush, 69; Escott v. White, 10 Bush, 172; Ewald v. N. W. M. L. Ins. Co., 60 Wis., 443; Smith v. Nat. Life Ins. Co., 103 Pa. St., 180; Bane v. Travelers' Ins. Co., 85 Ky., 685; Hexter v. U. S. Life Ins. Co., 12 Ky. Law Rep. 921.)

2. The policies were not surrendered within six months after double default was made in the payment of both *premium* and *interest*. The Kentucky decisions go only to the extent of refusing to uphold the forfeiture for non-payment of *interest*, and in this respect they are in direct conflict with the contract of insurance and a great majority of

the decisions of other States. (Grigsby v. St. Louis M. L. Ins. Co., 10 Bush, 314; Northwestern M. L. Ins. Co. v. Fort's Adm'r, 82 Ky., 269.)

3. The default for non-payment of *interest* upon a premium note has been upheld and enforced in the following cases : Knickerbocker Life Ins. Co. v. Harlan, 56 Miss., 516; Anderson v. St. Louis M. L. Ins. Co., 5 Big. Ins. Cas., 527; Tait v. N. Y. Life Ins. Co., 4 Big., 479 (decided by Judge Emmons, United States Circuit Judge); Smith v. St. Louis M. L. Ins. Co., 2 Tenn. Chy., 727; Russum v. St. Louis M. L. Ins. Co., 1 Mo. App., 228; Patch v. Phœnix M. L. Ins. Co., 44 Vt. 481; Yerger v. St. Louis M. L. Ins. Co., 5 Big. Ins. Cas., 248 (decided by Justice Brown, now of United States Supreme Court); Wall v. Home Ins. Co., 36 N.Y., 157; Attorney General v. N.Y. L. Ins. Co., 82 N. Y., 172; Knickerbocker L. Ins. Co. v. Dietz, 52 Md., 16 (Maryland decision); Nettleton v. St. Louis M. L. Ins. Co., 6 Ins. Law Jour., 426 (decided by Judge Gresham, United States Circuit Judge); Insurance Co. v. Robinson, 40 Ohio St. 270; Ewald v. N. W. M. L. Ins. Co., 60 Wis., 431.

4. The Grigsby and Fort cases should be overruled. (Lieber's Hermeneutics, Hammond's ed., p. 208.)

5. The following decisions uphold the default for non-payment of *premiums*, and are not contradicted by the Kentucky cases: People v. Widows' Ins. Co., 15 Hun., 8; Attorney General v. Continental Life Ins. Co., 93 N.Y., 70; Attorney General v. N.Y. L. Ins. Co., 82 N.Y., 172; 63 N. Y., 160; 88 N. Y., 541; Hudson v. Knickerbocker L. Ins. Co., 28 N. J. Eq., 167; Smith v. Nat. L. Ins. Co., 103 Pa. St., 180; Williams v. The Republic Ins. Co., 19 Mich., 469; Pitt v. The Berkshire Ins. Co., 100 Mass., 500; Robert v. N. E. M. L. Ins. Co., 1 Disney (Ohio), 355; Universal L. Ins. Co. v. Whitehead, 58 Miss., 226 ; Bussing Ins. Co. v. Baker, 85 Ill., 410; Coffery v. Universal L. Ins. Co., 7 Fed. Rep., 301; Moses v. Brooklyn L. Ins. Co., 50 Ga., 196; N.Y. L. Ins. Co. v. Statham, 93 U. S., 24 ; Thompson v. Knickerbocker L. Ins. Co., 104 U. S., 252; Klein v. N. Y. L. Ins. Co., 104 U. S., 88; Knickerbocker L. I. Co. v. Pendleton, 112 U. S., 696; Knapp v. Homeopathic L. I. Co., 117 U. S., 411.

6. The policies were not surrendered or a demand made for a paid-up policy until more than three years after default was made, which was not within a reasonable time. It was after appellant had divided and paid out the profits and surplus upon these policies among its other members, and it is therefore unreasonable to demand a paid-up policy now.

In Johnson v. The Southern M. L. I. Co., 79 Ky., 404, this court decided that *two months and ten days* was a reasonable time in which to make the surrender and demand; three years is not a reasonable time. In the Montague case the demand was made at once and the company put on notice. (84 Ky., 661; Hexter v. U. S. L. Ins. Co., 12 Ky. Law Rep., 921 (decided March 19, 1891).

7. The appellant does its business upon the "mutual plan," by dividing out its earnings of surplus and profits annually among its members, and retaining a "reserve" to meet its obligations. Appellees, being members of the association, drew their shares of profits and surplus so long as they were members, and until they quit paying, and then permitted appellant, with appellees' knowledge and consent, to pay out appellees' net reserve to the other members of the company, after having held it for six months, as the charter and policy required.

Appellees have now nothing in the company's hands. They are estopped from claiming anything; and to give them anything would be inequitable and a hardship upon the members of the company, especially the new members who have joined since these policies quit paying. Under no circumstances should they be given more than their net reserve, and even that would be a hardship. (Montgomery v. Phœnix M. L. Ins. Co., 14 Bush, 61; Fuller v. Mad. M. Ins. Co., 36 Wis., 599; Bonner v. N. W. M. L. Ins. Co., 36 hio St., 67; Moses v. Brooklyn L. Ins. Co., 50 Ga., 196.)

DODD & DODD for appellees.

The precise questions here presented were presented and decided in all of their different phases in the following cases: Montgomery v. Phœnix Mut. Life Ins. Co., 14 Bush, 51–74; Johnson v. Southern Mut. Life Ins. Co., 79 Ky., 403; Northwestern Mut. Life Ins. Co. v. Fort's Adm'r, 82 Ky., 269; Southern Mut. Life Ins. Co. v. Montague, 84 Ky., 653.

Additional citations in petition for rehearing: Germania Life Ins. Co. v. Saur, 7 Ky. Law Rep., 297; Northwestern Mut. Life Ins. Co. v. Barbour, 13 Ky. Law Rep., 205; Hexter v. United States Life Ins. Co., 11 Ky. Law Rep., 903, and 12 Ky. Law Rep., 921; Winfield on Adjudged Words and Phrases, p. 130; Chapin v. School District, 35 N. H., 450; Thompson v. Phœnix Ins. Co., 136 U. S., 287; Tribble v. Taul, 7 Mon., 456; Smith v. Thomas, 7 Mon., 62; Ohio Life Ins. Co. v. Debolt, 16 How., 416; Olcott v. Supervisor, 16 Wall., 678; Douglass v. Pike County, 101 U. S., 685; Green County v. Conners, 109 U. S., 104; May on Insurance, subdivisions "A" and "E," edition 1891; Cooke on Life Insurance, 149–153, edition 1891; Winchell v. Ins. Co., 8 Ins. L. J., 651; Ohde v. Northwestern Mut. Life Ins. Co., 40 Iowa, 35; Symonds v. Northwestern Mut. Life Ins. Co., 23 Minn., 491; Northwestern Mut. Life Ins. Co. v. Ross, 63 Ga., 199; Cowles v. Com. Life Ins. Co., 63 N. H., 300; Franklin Ins. Co. v. Wallace, 93 Ind., 7; Dorr v. Ins. Co., 67 Me., 428.

CHIEF JUSTICE HOLT delivered the opinion of the court.

December 11, 1878, the appellant, an insurance company doing business on the mutual plan, issued a policy

upon the life of James P. Barbour for $5,000, upon the ten-payment life plan, calling for a semi-annual premium of $111.30, payable in December and June of each year.

The premiums were paid for six years and six months, carrying the policy to June 11, 1885. The insured, instead of paying the premium then due, through the company's indulgence gave his note for it. December 11, 1885, when the year's business ended, he was entitled to a dividend out of the company's earnings of $42.78, which was credited upon his note. The balance of it has never been paid.

The payment of the premium, which became due on December 11, 1885, was also put off by the execution of another note. It has never been paid. No provision whatever was made for the payment of the premium that became due June 11, 1886.

Appellant received no money upon the policy after December, 1884, and when default altogether occurred on June 11, 1886, there was an indebtedness of the insured to the company for premiums and interest of several hundred dollars.

December 8, 1880, the appellant issued another policy upon the same life, like the first one, save it was for $2,500, and the premium of $111.95 was payable annually. Five premiums were paid, carrying the insurance to December 8, 1885. The premium then due was entitled to a dividend from the company's earnings of $20.31, which was credited, and a note given for $91.64, being the balance of it. It has never been paid. The premium which became due on December 8, 1886, was not paid or provided for in any way. No money was ever paid upon this policy, either as premiums or as interest upon notes

given for them, after December 3, 1884; and when default was made on December 8, 1886, there was an indebtedness for premium of a prior date and interest of about one hundred dollars.

The above must, as the pleadings now are, be assumed to be the facts, because they are in substance so stated in the answer, to which a demurrer was sustained.

October 3, 1889, and when about three years had elapsed from the time when both the policies ceased to be in force, this action was brought for a paid-up, *non*-participating policy of $5,250, by reason of the insurance above mentioned. The lower court allowed it to the extent of $4,500, and the company appeals, while the appellees, the wife and children of the insured, he having died since the appeal was taken, by a cross-appeal seek to recover the full amount of their claim.

Each of the policies provides : " The said company further promises and agrees that if, after two or more annual premiums shall have been paid in cash, default shall be made in the payment of any premium or interest on the day it shall become due, it will issue a paid-up, *non*-participating policy for as many tenth parts of the original sum insured as there shall have been annual premiums so paid, provided this policy be then freed from all indebtedness to the company, and provided also that written application be made therefor, and this policy and all interest therein be surrendered in the lifetime of the insured and within six months from the date of such default.

\*      \*      \*      \*      \*      \*      \*      \*

" If the said premiums shall not be paid at or before the times above mentioned for the payment thereof, then,

and in every such case, this policy shall cease and determine. * * *

"In every case where this policy shall cease, or become null and void, all payments thereon shall be forfeited to the company, except as above provided, and except that in case the person whose life is insured die by his own hand, the company shall return the premiums received, less dividends paid."

. The appellant claims that the appellees are not entitled to any relief whatever, because the policies were not surrendered within six months after default of payment of premium and all indebtedness to the company satisfied. It files with its answer and tenders to the appellees the notes executed by the insured to it.

The appellees upon the other hand claim that when the default of payment of premium was made the right to a policy of paid-up insurance existed, and that it was not lost by the failure to surrender the policies and discharge the indebtedness as stipulated. In other words, that this provision in the policies provides for a forfeiture in the nature of a penalty, which a court of equity will not enforce.

While forfeitures are not favored, yet conditions in policies of life insurance providing for their cessation in case of non-payment of premiums have been enforced by the courts in accordance with the terms of the contract. This is necessary owing to the nature and requirements of the business. Time is necessarily of the essence of the contract. If payments were not promptly made the business could not be conducted either with profit to those engaged in it or safety to those dealing with them. Properly speaking, these are not conditions of forfeiture,

but conditions precedent to the continuance of the risk, and unless performed the policy ceases.

Where, however, it is evident from the nature of the condition in the contract that the forfeiture provided was intended merely as a penalty, as, for instance, to secure not the ultimate but the prompt payment of interest to become due upon premium notes, and the default is only in time, and the company can be given all that was stipulated, then this court has held that a forfeiture should not be enforced. To do so in such a case would perhaps work an injustice to one party, while if not done the other party would still get the benefit of the contract. (Insurance Company v. Grigsby, 10 Bush, 310.)

It is not, however, necessary in this case to review the authorities bearing upon the question of forfeiure for the non-payment of interest upon premium notes. They are somewhat at variance in the different States.

The policies in this case provide that upon default of payment of premium the insurance shall cease. It is not a case where the policy ceased *pro tanto*, and a portion of the insurance remained in force, but the entire policy determined. It had no value after a default in the payment of premium. It is, however, provided that inasmuch as the insured has made a certain number of payments, he shall, provided he does certain things, be entitled to a paid-up, *non*-participating policy for a certain sum. A new right is given to him provided he does certain things. They are conditions precedent to the vesting of the right. It does not accrue until they are done. In the case of a forfeiture, rights already existing are divested, whereas in case of a condition precedent the right does not attach until it is performed.

These policies provide that the insured shall be entitled to the paid-up insurance, provided all his indebtedness to the company, whether principal or interest, shall be paid, and the policies surrendered within six months from the time of default of payment of premium. This was of the essence of the contract. The right to a paid-up policy did not accrue, and had not vested before the default in payment of premium, but was to accrue thereafter if certain conditions were performed. It is not like a case where the party has received the entire consideration for performance on his part, and the other party merely fails to demand performance within a stipulated time; but by the terms of the contract it has by the default of the party wholly determined, but the privilege is given to him, provided he does certain things, important to the other party, within a certain time, of acquiring a right.

The importance of this condition is shown by the admitted fact, as the pleadings in this case stand, that the appellant retained for over six months after default of payment of premium, as a part of its reserve fund, enough of its earnings to equal the paid-up policy to which the insured would have been entitled if he had complied with the terms of the contract; and not having done so, the company, being a mutual one, after the expiration of the time within which he had the right to do so, distributed the fund, as it had the right to do under its charter, to its persisting policy-holders.

This shows that the condition in the contract is an essential as well as a reasonable one in its terms. It enables the company to adjust its business for the benefit of its policy-holders, instead of being compelled to

retain its funds for an unreasonable time to meet the stale claims of those who have neglected to pay their premiums and indebtedness to it, through which alone it must conduct its business.

This case differs from Montgomery v. Insurance Company, 14 Bush, 51; Johnson v. Insurance Company, 79 Ky., 403; Insurance Company v. Fort's Adm'r, 82 Ky., 269, and Insurance Company v. Montague, 84 Ky., 653, as will be readily seen by an examination of those cases. It is more like the case of Hexter v. United States Life Insurance Company, 91 Ky., 356, which draws the distinction between those cases and it.

The judgment is reversed, the cross-appeal dismissed, and cause remanded, with directions to overrule the demurrer to the answer, and for further proper proceedings.