CASE 91—ACTION TO RECOVER A PAID-UP POLICY OF INSURANCE—JANU-ARY 17.

## Manhattan Life Ins. Co. v. Patterson.

APPEAL FROM HARLAN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

LIFE INSURANCE—DELAY IN APPLYING FOR PAID-UP POLICY.

Held: Where a policy of insurance provided that, if the policy should lapse for the nonpayment of any premium, the company would, upon the surrender of the policy within six months after such lapse, issue a paid-up policy, the insured, after paying five annual premiums, was entitled to a paid-up policy, though he

did not apply therefor for nearly five years after making default in the payment of the sixth premium; time not being of the essence of the contract.

HENRY W. BURNETT, ATTORNEY FOR APPELLANT.

D. B. LOGAN OF COUNSEL.

On November 7, 1887, appellee received from appellant a life policy for $5,000 on the twenty payment life plan. He paid five consecutive annual payments of premiums. The policy lapsed and became void, on the 7th of November, 1892, by reason of the non-payment of the premium due on that day, and under the terms of the policy the insured was given the right to surrender his policy to the company and to demand a non-participating paid-up policy, as above set forth, provided he exercised his right so to do, within six months from November 7, 1892.

On the 24th of May, 1897, nearly five years after the lapse of the policy he applied to appellant for a non-participating paid-up policy, and expressed a willingness to surrender his policy, being No. 57081. The defendant refused. This action is brought by the insured himself, in equity, asking that the defendant be required to issue to him a non-participating paid-up policy for $1,250, that being the amount of paid-up insurance, as the legal net reserve on the original policy at the time of lapsing, would purchase as a single premium at the company's then published rates.

1. The petition does not allege any excuse for the non-payment of the premium due on November 7, 1892.

2. It does not offer any reason why he did not within six months after the lapse of his policy, surrender it, and demand the paid-up policy which is now demanded.

3. He does not allege that he did not understand the full meaning and true intent of the provisions of the policy.

4. He does not allege that he was prevented from surrendering his policy, and demanding the paid-up insurance by any act or omission of appellant. The policy provides "that if any premium be not paid when due, the policy shall be void and all payments made shall be forfeited to the company, except after being in force three full years if it shall lapse or become forfeited by the non-payment of any premium, the company will, upon the surrender of the policy, within six months after such lapse, issue a non-participating paid-up policy for such sum as the legal net reserve on this policy, at the time of lapsing will purchase as a single premium at the company's present published rates."

The ruling of the lower court, is, that after the payment of three annual premiums by the insured, an indefeasible right to a paid-up policy for a proportionate amount became vested in the insured, which he could not relinquish by implication or inference, and which could not be lost by operation of law or by ordinary and accepted rules of construction of contracts.

I dissent from such a departure from the long established rules of construction, which have been repeatedly recognized and approved by this court.

### AUTHORITIES CITED.

Montgomery v. Ins. Co., 14 Bush., 51; Northwestern Life Ins. Co. v. Barbour, 92 Ky., 429, 432; Ins. Co. v. Grigsby, 10 Bush., 310; Johnson v. Ins. Co., 79 Ky., 43; Ins. Co. v. Forts' Admr., 82 Ky.; Ins. Co. v. Montague, 84 Ky., 653, Mut. Life Ins. Co. v. Jarboe, &c., 19 Ky. Law Rep., 1502; Holly (respondent) v. Mut. Life Ins. Co. (appellant) 104, N. Y., 437, 441, 444; Attorney General v. Con. Life Ins. Co., 93 N. Y., 70, 74; Miles v. Conn. Mut. Life Ins. Co., 147 U. S., 177; Knapp v. Homeopathic Mut. Life Ins. Co., 177 U. S., 411, 413, 414; Joyce on Ins., 2 vol., sec. 1185; Hudson v. Knickerbocker Life Ins. Co., 28 N. J. Eq., 167; (S. E. Rep., 532) 21 Ins. L. J., 114; Smith v. Nat. Life Ins. Co., 103 Penn. St., 177; Universal Life Ins. Co. v. Whitehead, 58 Mass., 226 (38 Am. Rep., 322); Phoenix Mut. Life Ins. Co. v. Baker, 85 Ill., 410; Chase v. Phoenix Mut. Life Ins. Co., 4 Ky. Law Rep., 903.

THOMAS J. BIGSTAFF FOR APPELLEE.

1. By the terms of the insurance policy; upon the payment of three premiums appellee has a right to have issued to him a paid-up non-participating policy for life, to be demanded within six months from last payment made.

2. If demand is not made within the six months, then appellee has a reasonable time in which to make it, which was done in this case.

3. The insurance company can not make its own law of limitation and bar appellee from recovery.

### AUTHORITIES CITED.

Mut. Life Ins. Co. v. Jarboe, &c., 19 R., 1501; St. L. Mut. Life Ins. Co. v. Grigsby, 10 Bush., 310; Johnson v. Ins. Co., 79 Ky., 403; Southern Mut. Life Ins. Co. v. Montague, 84 Ky., 653; Yewell v. Bradshaw, 2 Duvall, 573; Macklin v. Trustees, 88 Ky., 592; Chiles v. Drake, 2 Met., 146; Ky. Stats., sec. 2514; 5 Bush., 86; N. Y. Life Ins. Co. v. Stathem, &c., 93 U. S., 24.

Manhattan Life Ins. Co. v. Patterson.

OPINION OF THE COURT BY JUDGE DuRELLE—AFFIRMING.

In November, 1897, the appellee obtained from appellant company a life policy for $5,000 on the twenty-payment life plan. He paid five consecutive annual premiums, and, nearly five years after making default in the payment of the sixth premium, applied to the company for a non-participating paid-up policy for such sum as the legal net reserve on the policy at the time of lapsing would purchase as a single premium at the company's published rates. On the pleadings. judgment was rendered against the company. On this appeal, the cases of Hexter v. Insurance Co., 91 Ky., 356, (15 S. W., 863), and Insurance Co. v. Barbour, 92 Ky., 429, (17 S. W., 796), (15 L. R. A., 449), are relied on; although in the case of Insurance Co. v. Jarboe, 42 S. W., 1099, (39 L. R. A., 506), this court said, in an opinion by Judge Guffy: "To the extent, if any, that the principles announced in the decisions in Insurance Co. v. Barbour and Hexter v. Insurance Co. conflict with the doctrine announced in Montgomery v. Insurance Co., 14 Bush, 51, they are overruled."

Appellant undertakes to show that the cases of Hexter and Barbour were not in conflict with the Montgomery case, in 14 Bush, 51, and were distinguished from it in the opinions rendered in those cases; that in the Jarboe case it was expressly decided that the facts of that case brought it directly within the principles announced in the Montgomery case; that, therefore, it was not within the principles laid down in the Hexter and Barbour cases, which had been distinguished from the Montgomery case, and, not being in conflict with the Montgomery case, have not been overruled at all, because they were overruled to the extent only that they were in conflict with it. Following counsel's logic out to its legitimate conclusion,

the clause in the Jarboe opinion which overrules those two cases, in so far as they conflict with the Montgomery case, is absolutely without meaning, because there is nothing to which the language of the opinion can apply. In order to properly consider this argument, we must examine the provisions of the policies in the four cases referred to, in connection with those in the case at bar. Counsel concedes that "the rulings of this court on the question as to whether or not time is of the essence of a contract such as is involved in this appeal have not been apparently harmonious."

In the Montgomery case, in which a most carefully prepared and elaborate opinion was delivered by Judge Cofer, the policy was a ten-year endowment, and contained this provision: "It being understood and agreed that if, after the receipt of this company of not less than two or more annual premiums, this policy should cease in consequence of the non-payment of premiums, then, upon a surrender of the same, provided such surrender is made to the company within twelve months from the time of such ceasing, a new policy will be issued for the value acquired under the old one, subject to any notes that may have been received on account of premiums; that is to say, if payments for two years shall have been made, it will issue a policy for two-tenths of the sum originally insured." It also contained a provision that, if the annual premiums were not paid on the dates fixed, "then in every such case the said company shall not be liable for the payment of the whole sum assured, but only for a part thereof, proportionate with the annual payments made as above specified, and this policy shall cease and determine." At the time the last payment became due upon which any payment was made there was a partial payment in cash, and a note executed

for the unpaid amount, which provided: "And it is here-by understood and agreed that, if the amount of this note shall not be paid when due, the said policy shall be null and void." The note was not paid, no demand was made for its payment, no offer to return it or the last cash payment was made, no other premiums were paid, and the insured died without surrendering his policy, or demanding a new one, over three years after the execution of the note. It was held that the widow, who was the beneficiary under the policy, might recover five-tenths of the amount of the policy, subject to deduction for the amount due upon the notes.

In the Hexter case, the policy provided that, if the premiums should not be paid on or before the days mentioned for the payment thereof, "then, and in every such case, the said company shall not be liable to the payment of the sum insured, or any part thereof, and this policy shall cease and determine; provided that if, after the receipt by this company of not less than two whole years' premiums, this policy should cease in consequence of the non-payment of premiums, then upon the surrender of the same, provided such surrender is made to the company within twelve months from the time of such ceasing, a new policy will be issued for a proportion of the premiums paid." More than two years' premiums were paid, and after the death of the insured, and nearly fifteen years after the last payment of premium, suit was brought for an amount proportionate to the premiums paid. In an opinion by Judge Bennett it was held that a recovery could not be had, stress being laid upon the provision that on default of payment the company "shall not be liable to the payment of the sum insured, or any part thereof," notwith-standing the fact that in the same sentence it was "pro-

vided that if, after the receipt by this company of not less than two whole years' premiums, this policy should cease in consequence of the non-payment of premiums, then upon the surrender of the same, provided such surrender is made to the company within twelve months from the time of such ceasing, a new policy will be issued for a proportion of the premiums paid." The opinion distinguishes the case then in hand from the Montgomery case, and does not in express terms overrule the earlier case. But the argument of the opinion is exactly the reverse of the argument in the Montgomery case, and it is quite difficult to discover any stable ground for distinguishing the facts in the one case from those of the other, except upon the ground that a delay of nearly fifteen years was unreasonable. That ground, however, does not appear to have been relied upon, and the opinion has, we think, been uniformly regarded as overruling the doctrine laid down in the Montgomery case.

In Insurance Co. v. Barbour, 92 Ky., 431, (17 S. W., 796), (15 L. R. A., 453), the policy was on the ten-payment life plan, and six and one-half years' premiums were paid, and a note executed for the next premium falling due, which was never paid. An additional policy had been obtained, upon which two and one-half years' premiums were paid. About three years after default in payment suit was brought for a paid-up, non-participating policy. The policy provided: "The said company further promises and agrees that if, after two or more annual premiums shall have been paid in cash, default shall be made in the payment of any premium or interest on the day it shall become due, it will issue a paid-up, non-participating policy for as many tenth parts of the original sum insured as there shall have been annual premiums so paid, provided

this policy be then freed from all indebtedness to the company, and provided, also, that written application be made therefor, and this policy, and all interest therein, be surrendered in the lifetime of the insured, and within six months from the date of such default. . . . If the said premiums shall not be paid at or before the times above mentioned for the payment thereof, then, and in every such case, this policy shall cease and determine. . . . In every case where this policy shall cease, or become null and void, all payments thereon shall be forfeited to the company, except as above provided, and, except that in case the person whose life is insured die by his own hand, the company shall return the premiums received, less dividends paid." In an opinion by Judge Holt, then chief justice, this case was decided in favor of the insurance company, upon the ground that time was of the essence of the contract, and that the policy did not, by its provisions, cease *pro tanto*, and a portion of the insurance remain in force, but the entire policy determined. This case also is distinguished in the opinion from the Montgomery case, and the cases which followed its reasoning, of Johnson v. Insurance Co., 79 Ky., 403, Insurance Co. v. Fort's Adm'r, 82 Ky., 269, and Insurance Co. v. Montague, 84 Ky., 653, (2 S. W., 443), and was decided upon the authority of the Hexter case. It is equally difficult to see any sound reason for distinguishing the provisions of this policy from the Montgomery policy, and this case has also been uniformly regarded as a departure from the principles announced in the Montgomery case.

In considering all contracts, the effort of the court is, and should be, to ascertain the intention of the parties, who are, to that end, assumed to be persons of ordinary understanding. And it would be difficult, indeed, for a

person of ordinary understanding to see a difference in
the intent of the parties to the contract between a pro-
vision that upon default of payment of premiums the pol-
icy should cease and determine, and that if, after receipt
of two premiums, the policy should cease in consequence,
then upon a surrender, provided it is made within twelve
months, a new policy should be issued (which is, in sub-
stance, the provision in the Montgomery case); and
a provision that if, after two annual premiums
have been paid, default shall be made, the company will
issue a paid-up policy for a proportionate part of the
sum insured, provided the policy be surrendered within
six months from the date of default, coupled with a pro-
vision that, in case the policy shall cease, all payments
shall be forfeited to the company, except as above pro-
vided (as in the Barbour case); and a provision that, in
case of default in payment of premiums, the company
shall not be liable to the payment of the sum insured or
any part thereof, and the policy shall cease and determine,
provided that if, after payment of two years' premiums,
the policy should cease, then upon surrender thereof, made
within twelve months, a new policy should be issued (as
in the Hexter case). A person of ordinary intelligence,
reading these three provisions, would, it seems to us, un-
doubtedly reach the conclusion that, except with refer-
ence to the time provided for, they meant the same thing,
and that if time was not of the essence of the contract
in the one case it was not so in the other.

In the case of Holly v. Insurance Co., 105 N. Y., 437,
(11 N. E., 507), cited by appellant, it was said: "In cases
where the meaning is not entirely plain, and where it is
capable of two constructions, one involving forfeiture
and the other being fair and reasonable, and supporting

the obligation of the policy against the insurer, that construction is preferred by the courts which does not involve forfeiture, not only because it is not so harsh, but also because, if the language is doubtful, it is that employed by the insurer, and should be taken most strongly against him."

And so in the Jarboe case, the 20-year distribution policy provided, as shown by the record: "Each premium is due and payable at the home office of the company in the city of New York, but will be accepted elsewhere, when duly made in exchange for the company's receipt, signed by the president or secretary. Notice that each and every such payment is due at the date named in the policy is given and accepted by the delivery and acceptance of this policy, and any further notice, required by any statute, is hereby expressly waived. . . . If this policy shall become void by nonpayment of premium, all payments previously made shall be forfeited to the company, except as hereinafter provided." It further provides: "After three full annual payments have been made upon this policy, the company will, upon the legal surrender thereof, before default in payment of any premiums, or within six months thereafter, issue a nonparticipating policy for paid-up insurance, payable as herein provided, for the proportion of the amount of this policy which the number of full years' premiums paid bears to the total number required. . . . No agent has power on behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to bind the company by making any promise, or by receiving any representation or information not contained in the application for this policy." After payment of three premiums, default was made, and over four

years after default suit was brought to compel the issuance of a paid-up policy in accordance with the provision quoted. It was held, in an opinion by Judge Guffy, quoting liberally from the opinion of Judge Cofer in the Montgomery case, that the principles announced in that case applied to the case under consideration, "and we adhere to the doctrine announced in that decision." And while it was said in the opinion that the facts in the Jarboe case were essentially different from the Hexter case, and that the Barbour case was unlike the one in hand, nevertheless the doctrine of the Montgomery case was expressly reaffirmed, and the Hexter and Barbour cases were expressly overruled, in so far as they conflicted with it. By the reaffirmance of the Montgomery case, and the overruling of the decisions in the Hexter and Barbour cases, it was intended to decide that there had been a departure from the principles of the Montgomery case, and that the court returned to its original doctrine.

When we come to consider the case at bar, we find a provision in the policy which, in our opinion, conveys to the ordinary mind the same meaning which is conveyed by the provisions in the Montgomery and Jarboe cases: ".  .  . If any premium or interest on any note given on account of a premium be not paid when due, or if the insured die in consequence of any violation of law,  .  .  . this policy shall be void, and all payments made upon it shall be forfeited to the company, except after being in force three full years;  .  .  . and, if it shall lapse or become forfeited for the nonpayment of any premium or interest on any note given on account of a premium, the company will, upon the surrender of this policy within six months after such lapse, issue a nonparticipating, paid-up policy for such sum as the legal net reserve on this

policy at the time of lapsing will purchase as a single premium, at the company's present published rates." It is argued for appellant that this provision is not substantially different from the provisions referred to in the Hexter and Barbour cases. We concur in this view. But we are also of opinion that there is no substantial difference between the provisions construed in those cases and those in the Montgomery and Jarboe cases. The right to continue the $5,000 policy in force by the payment of premiums was gone. In that respect the policy had become void. The payments made upon it could not be recovered. They had been "forfeited to the company, except" that, as the policy had been in force three years, the right remained in the beneficiary to a paid-up policy for an amount proportionate to the net reserve upon the policy, which right, together with concurrent insurance in the full sum of $5,000, had been paid for by the payment of the premiums. The policy was null and void, except for this remaining right. This right was absolute, and, while it is provided that the company would issue a paid-up policy "upon the surrender of its policy within six months after such lapse," the time was not of the essence of the contract. The whole consideration had gone. There is no pretext appearing in the record that the performance of its contract for which it had received payment was more oppressive at the time it was demanded than if it had been demanded within the six months provided for. Some argument is made that the delay in making the demand imposed upon the company the burden of unnecessary bookkeeping. This we do not regard as sufficiently burdensome to justify retaining the purchase money and refusing to deliver the goods. As said in the Montgomery case: "The premiums, by express

convention, paid for both current insurance and a paid-up policy, and now to deny to the assured the benefit of a paid-up policy because the old one was not surrendered in time is, in the strictest and most obnoxious sense, a forfeiture. Such a claim is without support in reason, justice, or authority, and can not be sanctioned in a court of equity." For the reasons given, the judgment is affirmed.