CASE 15—ACTION BY N. L. CURRY & BRO. AGAINST NEW YORK LIFE INSURANCE COMPANY FOR REDEMPTION OF COLLATERAL SECURITY. MARCH 11.

# New York Life Insurance Company v. N. L. Curry & Bro.

### APPEAL FROM MERCER CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

LOAN FROM INSURANCE COMPANY—POLICY AS COLLATERAL—DEFAULT—FORFEITURE.

Held: 1. A provision in a contract of loan from an insurance company for which its paid-up policy is pledged as collateral, that on default in payment of interest for thirty days the policy shall, at the company's option, be surrendered to it at the customary cash surrender value then allowed by the company for the surrender of policies of that class, is void.

HUMPHREY, BURNETT & HUMPHREY, ATTORNEYS FOR APPELLANT.

On March 24, 1894, George J. Anderson borrowed from appellant $130, and executed a loan agreement by which he pledged to the company his policy for $630 in said company, payable 'at his death. Prior to August 1, 1899 Anderson sold and assigned his policy to N. L Curry & Bro., and obligated himself to pay the interest on his $130 loan on each recurring 1st of August.

By the terms of the loan agreement, in the event of default of any payment of said interest or of said loan or of any premium on said policy for thirty days after they shall respectively become due, said policy shall be deemed to be in effect at the option of the first party, surrendered to the first party at the customary cash surrender value then allowed by the first party for policies of this class, etc.

On August 1, 1899, the interest was not paid nor offered to be paid, for more than thirty days thereafter. On March 24, 1900, Curry & Bro. offered to pay the interest due up to August 1, 1899, which the agent received and gave a receipt therefor, upon condition recited therein, that the company or its general officers in New York might determine whether the policy might be reinstated. The company, on being advised, agreed to rein-

New York Life Insurance Company v. N. L. Curry & Bro.

state, provided Anderson would furnish the company a certificate of good health as provided in the policy. This, Curry & Bro. declined to procure, and the company then announced that the policy could not be reinstated, and tendered to Curry & Bro. the cash surrender value of the $630, paid-up policy less the unpaid loan and interest which had accrued up to August 1, 1899, and also tendered to them the interest which had accrued up to August 1, 1899, which had been paid to appellant's agent.

Thereupon the appellees instituted this suit, in which they pray "for a judgment against the defendants, compelling them to reinstate the said policy and cancel the loan note, and that they be compelled to deliver said policy to the plaintiffs as a binding policy, and if this can not be done, then for the value of the policy."

A demurrer was sustained to the answer of defendant, and declining to plead further judgment was rendered by the court ordering and requiring the company to reinstate said policy and deliver it to plaintiff upon the payment of the principal and interest of the loan of $130 made by the company to Anderson, and from this judgment this appeal is prosecuted.

There is nothing in this record to show the age of Anderson nor his expectancy of life, and we submit that the action of the trial court in adjudging, as it did, that the allegations of the answer as to the then present value of the $630 policy were demurrable, was such a high-handed, arbitrary ruling as we believe this court will not approve.

We insist that the regulations of the company requiring a health certificate after the lapse of the policy before reinstating it are reasonable and were understood and consented to by the parties to the agreement, and are not opposed by any phase of public policy.

Unless this court will follow the lower court and inject into this contract new and independent conditions, it seems to us that the judgment in this case ought to be reversed.

GAITHER & VANARSDALL, FOR APPELLEE

As to the time the annual interest was due on the loan note, whether payable August 1, 1899, or March 24, 1900, we think the averments and denials are of no importance, as time is not the essence of the contract; neither do we regard the date of tender of interest by appellees as of any concern in determining the sufficiency of the answer, as both petition and answer show that a tender was made before the filing of the suit.

We likewise regard as not essential, the averment as to tender of the entire debt and interest, in the determination of ap-

New York Life Insurance Company v. N. L. Curry & Bro.

pellee's right to a reinstatement, as this right depends solely upon the payment of the interest.

The averment in the answer that the policy was worth $12.47 at the date of cancellation, would furnish grounds for overruling the demurrer to the answer, were it not for the fact that the relief sought, primarily, is not the value of the policy, but the policy itself, and if this relief is granted, the issue as to value becomes unimportant.

We contend that the policy in a question was a paid-up policy and could not lapse, whilst it has been held that a forfeiture made be had upon a stipulation in the policy for failure to pay the *premium*, or at least the company in such case may exact a health certificate in order to a reinstatement, but no such forfeiture or exaction has ever been permitted or upheld in any court within the scope of our investigation for *failure to pay interest on a loan, or even interest on a premium note.*

### AUTHORITIES CITED.

Mutual Life Ins. Co. v. Jarboe, 19 R., 1501; Northwestern Mutual Life Ins. Co. v. Fort's Admr., 82 Ky., 269.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

George J. Anderson was the holder of a paid-up policy of insurance upon his life for $630, issued by the appellant, and payable upon the death of the insured to his estate. Anderson borrowed $130 from appellant, and executed to it a writing, called a "Loan Agreement," by which he pledged to appellant the policy to secure the repayment of the loan. Interest on the loan was payable on August 1st of each year (that being the anniversary of the insurance), so long as the principal was owing. The loan agreement contained the following: "It is agreed that interest at the rate of five (5) per cent. per annum shall be paid upon said loan at the anniversary of the insurance next succeeding, and annually thereafter, at the office of said party of the first part. It is agreed that although it is not intended that said party of the first part shall demand payment of said loan until the first day of August, 1909, on which date said loan shall become and be due and payable, or until the death of the

party whose life is insured under said policy, said party of
the first part reserves the right to demand repayment pro-
vided said interest is not duly paid." It is further pro-
vided as follows: "It is agreed that in the event of the
default of any payment of said interest or of said loan or
of any premium on said policy for thirty days after they
shall respectively become due said policy shall be deemed
to be and shall be in effect at the option of said party of
the first part, surrendered to said party of the first part
at the customary cash surrender value then allowed by said
party of the first part for the surrender of policies of this
class, said party of the first part in that case being liable
to said party of the second part for the return of the bal-
ance only of said cash surrender value after deducting said
loan and interest and any expenses incurred thereon." And
further: "It is agreed that said party of the second part has
deposited said policy and its accumulations with said party
of the first part as collateral security for said loan, on the
terms and conditions of this agreement, and covenants and
agrees to and with said party of the first part to abide by
and perform all and singular the stipulations and agreement
contained in this agreement." And further: "It is agreed
that all the conditions, limitations and requirements of
said policy except as herein expressly modified, remain in
full force."

On the 1st of August, 1899, when the interest on the $130
loan became due and payable according to the terms of the
contract, it was not paid; nor was it paid for more than
thirty days thereafter; nor was it offered to be paid until
nearly eight months after its maturity. Appellant then
refused to receive it and reinstate the insurance (which it
had canceled as forfeited because of the nonpayment of in-
terest as provided in the agreement above copied), unless

the insured would furnish a certificate of his then good
health. That he did not do so, and, possibly, could not have
done. As a matter of fact appellant admits that the "accu-
mulations" hypothecated with this policy as collateral to
its loan of $130 were, when included in the "cash surrender
value then allowed" by appellant on this class of policies,
some $12.47 more than the principal and interest owing
appellant when the default occurred. Before the interest
above named became due, Anderson had assigned the policy
for value to appellees, his creditors, of which appellant had
notice at the time. Being apprised of the appellant's claim
of the forfeiture of the policy, appellees tendered the inter-
est and principal of Anderson's loan, and offered to redeem
the policy for their benefit as assignees and creditors. Be-
ing refused, this suit was brought to compel appellant to
reinstate the policy, or to pay its value above the amount
of appellant's debt and interest, to appellees. That excess
of value was alleged to be $300. Appellant, by answer, re-
lied on the surrender and cancellation of the policy under
the contract and conditions above stated. The circuit
court sustained a demurrer to the answer, and adjudged
that upon the payment to appellant of the $130 and inter-
est that it reinstate the policy.

This appeal involves the validity of the clause of the
above agreement providing for the surrender or practically
for the forfeiture of the policy, if the interest on the loan
was not promptly paid when due. By the terms of this writ-
ing, if the loan, or its interest, was not repaid when due
under the loan agreement, the policy was to be "surrender-
ed" to the insurer "at the customary cash surrender value
then allowed by said party for the surrender of policies of
this class." That is, pure and simple, a provision for the
forfeiture of the policy upon such terms as the payee of the

note may require, and at its option. The difference between this and the ordinary unqualified forfeiture lies alone in the extent of the forfeiture. It operates as an enforced conversion without further notice to, or consent of, the borrower, of his collateral, if he fails to promptly pay the interest upon his debt.

The contract of insurance between appellant and Anderson had been fully executed so far as Anderson was concerned. He had paid all that he was required to pay to be entitled to receive from appellant the full sum stipulated to be paid—$630—at his death. The $130 was borrowed from appellant since that completion of the contract.

The courts have uniformly held in favor of the insurer that agreements for the forfeiture of the policy when premiums were not paid when due are valid, and their enforcement is upheld. This is said to be because "on the prompt payment of the premiums depends the mutuality of the contract and the ability of the insurance company to meet its obligations." But both the reason and the rule are restricted to the matter of premiums alone. Forfeitures are disfavored in law. When they are mere penalties for the nonpayment of borrowed money, they are not allowed. They lead to, and themselves are, unconscionable oppressions of the unfortunate.

The question in this case, in collateral form, has been before this court several times.

In St. Louis Mut. Life Ins. Co. v. Grigsby, 10 Bush, 310, a policy provided that if the interest upon premium notes given by the insured was not promptly paid when due it should work a forfeiture of the policy, including all that had been paid on it. Said the court (per Lindsay, J.) : "We are satisfied from the nature of the contract that the forfeiture was intended as a penalty, to secure, not the ulti-

mate, but the prompt, payment of the interest to become due; and as the default is only in time, and as the company can be given all that it stipulated to receive, a case is presented in which relief can and ought to be afforded."

In Montgomery v. Phoenix Mutual Life Ins. Co., 14 Bush, 51, the question was whether a failure to surrender the old policy and to demand a paid-up policy for the lesser sum in case of default after paying a certain number of premiums, forfeited the insurer's rights. This court (per Cofer, J.) held that time was not of the essence of the undertaking; that the clause for a forfeiture was repugnant to the policy of the law, and was contradistinguished from conditions precedent. The court quoted approvingly the following section from Story's Equity, section 1314: "Wherever a penalty is inserted merely to secure the performance or enjoyment of a collateral object the latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory, and therefore as intended only to secure the due performance thereof, or the damage really incurred by the nonperformance. In every such case the true test by which to ascertain whether relief can be had in equity is to consider whether compensation can be made or not."

In North Western Mutual Life Ins. Co. v. Fort's Admr., 82 Ky., 269, 6 R., 271, the question was whether the failure of the insured to pay promptly the interest on certain premium notes voided the policy under a provision which declared, "which interest shall be paid annually or the policy be forfeited." The court (per Lewis, J.) held: "Here the default, if any has occurred, is not of the substance of the contract, but in the time of the payment of interest, and the company can be given all that it stipulated to receive. On the other hand, to forfeit the whole policy on account of

default in time of payment of the interest, which formed but a small part of the consideration, and which the company is secured in the full payment of, if not already paid, would impose upon the assured the entire loss of the premiums actually paid. A forfeiture under such circumstances would be extremely oppressive, and if provided for between individuals concerning any ordinary business transaction be held as in the nature of a penalty."

The later case of Mutual Life Ins. Co. v. Jarboe, 102 Ky., 80, 19 R., 1505, 42 S. W., 1097, 39 L. R. A., 504, 80 Am. St. Rep., 343, was quite similar to Montgomery v. Phoenix Mut. Life Ins. Co., *supra*. It was there reasserted (per Guffy, J.) : "Time is not generally of the essence of contracts. Story's Equity, sec. 776. It may be so when the contract is executory on both sides, or when the nature of the transaction or the stipulation of the parties shows it was so intended by them. But when the defendant has received the entire consideration for performance on his part, and has no other defense except that the plaintiff did not come within the stipulated time to demand performance, we are not acquainted with any authority or legal principle upon which such a defense can be upheld in a court of equity."

Also, see Manhattan Life Ins. Co. v. Patterson (109 Ky., 624, 22 R., 1282), 60 S. W., 383, 53 L. R. A., 378; Washington Life Ins. Co. v. Miles (23 R., 1705), 66 S. W., 740.

In all of these cases the failure relied on as a forfeiture was connected with the existence of the original contract of insurance. It was not always easy to distinguish between the legal principles governing the right to provide for forfeiture because of nonpayment of premium notes and the nonpayment of interest on premium notes. The evident aim of the insurers was to bring the interest upon

the notes within the principles governing the notes themselves. The court, however, noted a distinction, and applied it.

In the case at bar there is no perceivable reason why the insurance company lending the money is, or can be, in a different position from any other lender of the money had the policy been assigned to the latter as collateral, and a default in payment of the interest had occurred. If it loans money on its policies held by its policyholders, its rights as lender are exactly what they would be if, instead of the policies, the borrower pledged stocks, bonds, or policies in other companies, or gave a chattel or real estate mortgage to secure the loan. There is nothing in appellant's business, or charter rights, so far as we are advised, which entitles it to privileges when loaning its money not enjoyed generally by banks, trust companies, and other corporations and individuals.

We are of opinion that the provision in the loan agreement for a surrender or forfeiture of the policy upon the nonpayment of the interest upon the loan is void.

The judgment of the circuit court is therefore affirmed.

Petition for rehearing by appellant overruled.