CASE 59.—ACTION BY THE MUTUAL LIFE INS. CO. OF KEN-
        TUCKY   AGAINST   JAMES   C.   TWYMAN   AND
        OTHERS TO CANCEL A POLICY OF INSURANCE.—
        March 29.

## Mutual Life Ins. Co. of Ky. v. Twyman, etc.

122  513
122  578
123  516

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment   for   plaintiff.   Defendant   appeals.
Reversed.

1. Insurance—Life Policy—Assignment by Insured—The charter
    of a life insurance company, in ·effect the same as Ky. Stats.
    1903, sections 654, 655, providing that a policy for the benefit
    of insured's wife and children shall not be made liable for
    his debts, but on his death the insurance shall be paid to

Mutual Life Ins. Co. of Ky. v. Twyman, etc.

the beneficiaries free of his debts, does not prohibit the insured in a paid-up policy (payable to his wife and children, and stipulating that he may, with the consent of the company, assign it or change the beneficiaries) from assigning it, without the consent of the beneficiaries, and he may borrow money from the company and assign it as collateral without such consent.

2. Same—Assignment of Policy as Collateral—Rights on Non-payment of Debt—Where the insured in a paid-up policy, authorizing him to assign it or change the beneficiaries, borrowed money from the company and assigned the policy as collateral by an assignment authorizing the company, on the nonpayment of the debt to cancel the policy, the company, on the insured failing to pay the debt, must resort to equity to enforce its rights based on the surrender value of the policy determined in the manner provided by Ky. Stats. 1903, section 653, and on the court finding that such value exceeded the debt, the sum left over should be ordered paid over to the insured or the same should be used for the purchase of paid-up insurance, as the insured might elect.

FALCONER & FALCONER, LONG & PRICE, and KOHN, BAIRD & SPINDLE, for appellant.

1. The enforcement of an agreement for surrender and cancellation of a life insurance policy at its cash surrender value upon default in payment of a debt for which it is pledged as collateral, does not work a forfeiture, and is not against public policy.

## AUTHORITIES CITED.

Ky. Statute, section 659; Wirgman v. Miller, 98 Ky. 620; New York Life Ins. Co. v. Curry, 24 Ky. Lew Rep. 1930; St. Louis Mutual Life Ins. Co. v. Grigsby, 10 Bush 310; Northwestern Mutual Life Ins. Co. v. Fort's Adm'r, 82 Ky. 269; Palmer v. Mutual Life Ins. Co. v. 38 Misc. (N. Y. Supreme Court, 318).

2. A public sale of a life insurance policy upon default in payment of a debt for which it is pledged as collateral is unnecessary and would be illegal.

## AUTHORITIES CITED.

Schlamp v. Bernier's Adm'r, 51 S. W. 312; 21 Ky. Law Rep.

324; Bayse v. Adams, 81 Ky., 368; Warnock v. Davis, 104 U. S., 462; Cammack v. Louis, 15 Wal., 643; Franklin Life Ins. Co. v. Hazzard, 41 Black (Ind.), 121; Missouri Valley Life Ins. Co. v. Sturges, 18 Kansas, 93; May on Insurance, 398; Price v. Knights of Honor, 68 Texas, 361; Helmetag's Adm'r v. Miller, 76 Ala., 183; Heusner v. Mutual Life Ins. Co., 47 Mo. App., 336; Palmer v. Mutual Life Ins. Co., 38 Misc. (N. Y. Supreme Court) 318.

C. J. BRONSTON, for appellees

We insist that under the well settled law of this State, the appellant could not, in view of the provisions of its own charter, defeat the vested rights of the wife and children of the insured, by accepting said policy as collateral security ,and if we be mistaken in that position, certainly the attempted forfeiture, because of non-payment of the principal and interest of the debt, will not be permitted under the fixed rule of the laws of Kentucky.

## AUTHORITIES CITED.

Ky. Masonic Mut. Life Ins. Co. v. Miller's Adm'r., 13 Bush, 489; Duvall v. Goodson, 79, 79 Ky., 224; Leaf v. Leaf, 92 Ky., 166; Washington Central Bank v. Hume, 128 U. S., 195; New York Life Ins. Co. v. Curry & Bro., 24 Ky. Law Rep., 1932; St. Louis Mut. Life Ins. Co. v. Grigsby, 10 Bush, 310; Montgomery v. The Phoenix Mut. Life Ins. Co., 14 Bush, 51; Northwestern Mut. Life Ins. Co. v. Fort's Adm'r, 82 Ky., 269; The Mutual Life Ins. Co. v. Jarbeau, 102 Ky., 80; Manhattan Life Ins. Co. v. Patterson, 22 Ky. Law Rep., 1282; Washington Life Ins. Co. v. Miles, 23 Ky. Law Rep., 1705.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

In view of the importance of the questions involved in this case and the uncertainty of the court as to the correctness of some of the conclusions expressed in its opinion of October 12, 1905 (see Mutual Life Insurance Co. v. Twyman, etc., 89 S. W. 178, 28 Ky. Law Rep. 167), a rehearing was granted upon the court's own motion, the opinion withdrawn and an oral argument allowed. Since the resubmission of

the case it has been duly considered by the full bench, with the result set forth in this opinion.

The following brief statement of the facts will be necessary to give an understanding of the questions presented for decision. On March 14, 1884, the appellant insurance company issued and delivered to the appellee, James C. Twyman, a policy of $2,000 upon his life, payable at his death to his wife and two sons, all of whom are still living. The policy was what is called "A fifteen payment life," that is after the payment of fifteen annual premiums it became a paid up policy. The insured paid on this policy fifteen annual premiums of $90.66, each, the aggregate of which amounted to $1,359.90. Five months after the payment of the fifteenth and last premium, appellee, James C. Twyman, borrowed of appellant $700, and for this amount executed his promissory note, of date, July 8, 1898, bearing 7 per cent. interest from date, and payable one year after date. To secure the payment of the note he, without the consent of the beneficiaries, assigned and delivered to appellant the policy. No indorsement was made on the policy, but on the face of the note this statement appears: "As collateral security for the payment of this note, I hereby assign, transfer, and deliver to the said company, policy No. 8800 for $2,000, which is to be returned to me upon the payment of this note and interest at maturity. The said policy is hereby assigned and surrendered to said company for cancellation in satisfaction of this note, and in settlement of the cash surrender value of said policy." Appellee, James C. Twyman, made the following payments of interest on the note: $24.50, January 11, 1899; $24.50, July 8, 1899; $24.50, January 11, 1900; $24.50, January 1, 1901, but failed to make any further pay-

ment of interest, or to pay the principal of the note, whereupon appellant, on May 12, 1902, undertook, without the consent of the insured or the beneficiaries, to cancel the policy on the life of the former, by calculating its cash surrender value as of that date, in doing which, it professed to compute interest at 6 per cent. on the amount of the loan from the date of the note to May 12, 1902, and applied the sums paid on the note as interest, as of the dates of their payment respectively, which left, as claimed by appellant, after satisfying the note, a balance of the cash surrender value of the policy amounting to $5.47, and this sum appellant tendered appellee, James C. Twyman, in money, which he refused to accept. Having failed to obtain the latter's acceptance of the sum thus tendered him, appellant instituted this action in equity against him, his wife and children, to have the policy cancelled and compel appellees to accept the $5.47, alleged to be due them in settlement of its cash surrender value, less the amount appropriated in satisfaction of the note. Appellees filed a demurrer to the petition, which the lower court sustained, and appellant refusing to plead further, judgment was entered dismissing its action, and from that judgment it has appealed.

The demurrer was based upon two grounds: (1) That such a pledge and assignment of the policy as was attempted by appellee was forbidden by appellant's charter: (2) that in any event it could not, without the consent of the beneficiaries, legally be assigned or pledged for a loan to the insured, or forfeited or canceled by appellant because of the failure of the insured to repay such loan. The charter of appellant (amendment enacted in March, 1878) provides: "Any policy of insurance hereto-

fore issued, or that may hereafter be issued by said company, for the use, benefit, or advantage of the wife, widow, children, father, or mother of any person whose ilfe may be insured by said company, shall not be held or made liable for any debts, contracts, or engagements of the person whose life is or may be insured, and all such insurance in the event of the decease of the person whose life is or may be insured, shall be paid to the person or persons named in the policy as beneficiaries therein, or to their assigns or legal representatives, to be held by him, her or them, free and discharged of and from all existing debts, contracts and engagements whatsoever of the said deceased person.'' We are now satisfied that we were in error in holding in the former opinion that the foregoing provision of appellant's charter presented a legal barrier to the assignment to it by the insured of the policy in question, and also in holding that the charter provision, supra, nullified that clause of the policy which says: ''This policy is issued and accepted upon the express condition that the insured, James C. Tywman, with the consent of the company, may at any time assign it, or before assignment change the beneficiary therein, or make any other change.'' We find that the section supra of appellant's charter is in meaning and effect the same as sections 654 and 655 Ky. Stats. 1903, and the latter but substantial re-enactments of sections 30, 31, and 32 of the general insurance law contained in the act of March 12, 1870, 1 Pub. Acts 1869-70, pp. 71, 72, c. 645; Gen. St. 1888, Appendix, pp. 40, 41.

The object of the several sections of the statutes, and also of the provision of appellant's charter

quoted above, is to exempt policies on the life of the husband or father that are made payable to the wife or children from the debts of the insured, or where the policy is made payable to any person, having an insurable interest in the life of the insured, to exempt it from the payment of the latter's debts. But as we shall presently see from repeated decisions of this court, such statutes or charter provisions do not interfere with the right of the insured to change the beneficiary, or assign the policy, if the right to do so is expressed or reserved in the policy itself. In other words, the rule that a policy of life insurance vests when issued in the person named in it as the beneficiary; and that because of such vested right it cannot be transferred by the insured to any other person, does not, it would seem, apply where the policy contains a stipulation to the effect that the insured may change the beneficiary. In such a case the right vests conditionally, not absolutely. In Hopkins v. Hopkins, 92 Ky. 324, 13 Ky. Law Rep. 707, 17 S. W. 864, we find this doctrine clearly stated in a controversy between husband and wife over a policy issued to the former by the same insurance company appearing as appellant in the case at bar. The policy insured the life of the husband, was made payable at his death to his wife, if living, and if not, to their children. The policy contained a clause, with reference to the right of the insured to assign it or change the beneficiaries, word for word like that of the policy in this case. Hopkins and wife separated, and the action grew out of the refusal of the insurance company to permit the wife, for herself and child, to pay a past due premium on the policy, and to assume the payment of the future premiums, which she claimed the right to do, on the

ground that she as the beneficiary named in the policy acquired upon its issual a vested right to the policy and the insurance it provided for, and that the clause in the policy authorizing a change of beneficiary was in conflict both with the charter of the company and the general law of the State, and therefore void. In disposing of this contention, the court said: "The general rule is that the right to a policy of insurance, and the money to become due under it, vest immediately upon its issual in the person named in it as the beneficiary; and that this interest, being vested, cannot be transferred by the insured to any other person. Central Bank of Washington v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 52 L. Ed. 370. The vested right cannot be divested without the consent of the person invested with it. This is so as to insurance in both mutual and ordinary life insurance companies. This does not hold true, however, where the contract of insurance provides that the insured may change the beneficiary. In such a case it vests conditionally only. The right of the one named in the policy is then subject to be defeated by the terms of the very contract naming him as the beneficiary. It is a condition of the contract, and his right is therefore subject to it." After quoting the same provision of appellant's charter that we have made a part of this opinion, and also quoting the several sections of the General Statutes which are substantially the same as sections 654-655, Ky. Stats. 1903, the opinion further says: "The clause in the policy relative to a change of beneficiary does not, in our opinion, conflict with these provisions of the company's charter and the general law. They certainly do not in express terms forbid such a condition in the contract, nor can the prohibition be

fairly implied. They merely mean that when a married woman is entitled to insurance, or the proceeds of it, it must be held to be her separate estate, and not liable for the debts of her husband or those of the person through whom it was obtained. The insurance is her separate estate so long as it remains payable to her. This, however, does not prevent the insertion of a condition in the contract by which her right to the insurance may be defeated.     *     *     *     "

In the later cases of Wirgman v. Miller, 98 Ky., 620, 17 Ky. Law Rep. 1174, 33 S. W. 937; Baldwin v. Haydon, 70 S. W. 300, 24 Ky. Law Rep. 900; Wrathor v. Stacy, 82 S. W. 420, 26 Ky. Law Rep. 683, the rule announced in Hopkins v. Hopkins, etc., supra, was approved and followed by the court. So, by the foregoing authorities, it seems to be well settled in this State that where it is provided in a policy of insurance that the insured may change the beneficiary, his right to do so cannot be questioned, and the fact that such right is conferred by the policy prevents it from vesting absolutely in the first or a subsequent beneficiary. This being true, the several decisions of this court so holding, constitute a rule of property which, under the doctrine of stare decisis, should be adhered to in this case. It therefore follows that the insured, James C. Twyman, had the right without the consent of his wife and sons to dispose of the policy in question; that is, "at any time to assign it, or before assignment change the beneficiaries therein, or make any other change," with the consent of the insurance company. For, though payable to the wife and children at his death, the reservation in the policy of this right to him prevented it from becoming a policy for their use or

benefit, so long as he might continue to live, and be capable of exercising such right. The right of the wife and children as beneficiaries was therefore contingent and subject to the right of the insured to dispose of the policy as he saw fit. Mente v. Townsend, 68 Ark. 391, 59 S. W. 41; Marsh v. Sup. Council, etc., 149 Mass. 512, 21 N. E. 1070, 4 L. R. A. 382; Sabin v. Phinney, 134 N. Y. 423, 31 N. E. 1087, 30 Am. St. Rep. 681; Swift v. Swift, 96 Ill. 309; Splawn v. Chew, 60 Tex. 532; Nally v. Nally, 74 Ga. 669, 58 Am. Rep. 458; Hopkins v. N. W. Life Assur. Co., 99 Fed. 199, 40 C. C. A. 1.

From what has already been said it is hardly necessary to add that we think appellee James C. Twyman had the legal right to borrow money of the appellant insurance company, and to assign to it the policy he held upon his life as collateral security for the payment of the note evidencing the loan, as was done by him, but we are of opinion, not withstanding his failure to pay the note at its maturity, appellant had not the arbitrary right to forfeit or cancel the policy at its own option, and certainly not upon such an inequitable basis as would deprive the insured of any part of the cash surrender value of the policy in liquidating his debt, if it had such value over and above the debt. Such forfeitures have been condemned by this court. In N. Y. Life Ins. Co. v. Curry & Bro., 115 Ky. 100, 23 Ky. Law Rep. 1930, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep. 297, the authorities on the subject were reviewed by this court. The facts of that case were that one George Anderson, who was the owner of a paid-up life policy of insurance upon his life for $630, in the New York Life Insurance Company, payable to his estate borrowed of that company $130, and assigned his

policy as collateral security for its payment, upon the condition that in case of default in any payment of interest on the loan, the company might declare the debt due, cancel the policy, and apply its cash surrender value to the payment of the insured's note and interest  In discussing this provision of the contract between .the parties, this court in an opinion by Judge O'Rear said: "That is pure and . simple a provision for the forfeiture of the policy upon such terms as the payee of the note may require and at its option.  The difference between this and the ordinary unqualified forfeiture lies alone in the extent of the forfeiture.  It operates as an enforced conversion without further notice to or consent of the borrower of his collateral, if he promptly fails to pay interest on the debt.  The contract of insurance between appellant and Anderson had been fully executed so far as Anderson was concerned. He had paid all that he was required to pay to be entitled to receive from appellant the full sum stipulated to be paid ($630) at his death.  The $130 was borrowed from appellant since the completion of the contract.  The courts have uniformly held in favor of the insurer that agreements for the forfeiture of the policy when premiums were not paid when due are valid, and their enforcement upheld.  This is said to be because on the prompt payment of the premium depends the mutuality of the contract and the ability of the insurance company to meet its obligations.  But both the reason and the rule are restricted to the matter of premiums alone.  Forfeitures are disfavored in law.  When they are merely penalties for the nonpayment of borrowed money, they are not allowed.  They lead to, and themselves are, unconscionable oppressions of the

unfortunate." After quoting with approval the cases of St. Louis Mutual Life Insurance Co. v. Crigsby, 10 Bush, 310; Montgomery v. Phoenix Insurance Co., 14 Bush, 51; Northwestern Insurance Co., v. Fort's Adm'r, 82 Ky. 269; 6 Ky. Law Rep. 271; Mutual Life Insurance Co. v. Jarboe, 102 Ky. 80, 19 Ky. Law Rep. 1501, 42 S. W. 1097, 39 L. R. A. 504, 80 Am. St. Rep. 343; Manhattan Life Insurance Co. v. Patterson, 109 Ky. 624, 22 Ky. Law Rep. 1282, 60 S. W. 383, 53 L. R. A. 378, 95 Am. St. Rep. 393, and holding that they are in line with the case supra, the opinion concludes as follows: "In the case at bar there is no perceivable reason why the insurance company lending the money is, or can be, in a different position from any other lender of money had the policy been assigned to the latter as collateral, and a default in payment of the interest had occurred. If it loans money on its policies held by its policy holders, its rights as lender are exactly what they would be if, instead of the policies, the borrower pledged stocks, bonds, or policies in other companies, or gave a chattel or real estate mortgage to secure the loan. There is nothing in appellant's business or charter rights, so far as we are advised, which entitled it to privileges when loaning its money not enjoyed generally by banks, trust companies, and other corporations or individuals. We are of opinion that the provision in the loan agreement for a surrender or forfeiture of the policy upon the nonpayment of the interest upon the loan is void."

Applying this principle to the case at bar, the question naturally presents itself, what remedy has the insurance company in a case like this? It cannot sell the policy in satisfaction of the debt, or by suit obtain a decree for its sale, for such sales of insurance

policies are forbidden by law. It would manifestly be unjust to require it to remain out of the use of the money due it from the borrower until the death of the latter with the view of then deducting it from the proceeds of the policy, for he might live until the debt would exceed in amount the proceeds of the policy. Originally, the sole purpose of life insurance was to afford indemnity or protection to the family of the insured against poverty and want in case of the loss by death of his services, and for this object alone life insurance companies were primarily created and organized. But under the developing processes of industrial life and commercial expansion the object of life insurance has been extended, so as to allow those who hold policies to pledge or assign them, under proper restrictions, as security for loans to be employed in business adventures and commercial pursuits. Whether such extension of the use of life insurance is a departure from the philanthropic sentiment that gave it birth, is not for us to say; it is sufficient to know that it is recognized by the courts, and consequently to be respected and upheld within proper and legal bounds. Having this in mind, and at the same time the advantage possessed by the insurance company over the borrower whose policy is pledged to it as security for a loan, it should be the care of the courts in settling a controversy between the company and borrower, such as is here presented, to see to it that the insurance company shall not be aided in enforcing an unconscionable bargain exacted of the borrower by reason of his necessities. It should be put upon the same plane with other money lenders in making loans to its policy holders, and the borrower compelled to pay what he may justly owe it, as he would

to any other creditor. When the appellee James C. Twyman failed to pay the note due appellant, and accrued interest, according to the terms of the contract, the latter, instead of treating such failure as a forfeiture of the assigned policy, and without his consent, arbitrarily fixing its cash surrender value, should, like any other creditor holding a debt secured by lien, have resorted to a court of equity for the enforcement of its rights Though, in an action for such a purpose a decree for the sale of the policy, as other collateral or mortgaged property may be sold, would not be allowed, for the sale of a policy of insurance in that way, as already said, is forbidden by law, the court could decree its cancellation upon allowing to the insured its full cash surrender value, less appellant's debt.

We are of opinion that an equitable basis for ascertaining the net or surrender value of the policy in controversy is provided by section 653, Ky. Stats. 1903, and if upon the return of the case to the circuit court, appellees by answer insist that the cash surrender value of the policy, in view of its immediate cancellation, is greater than the sum at which it was fixed by appellant, it will be the duty of the court to ascertain such value as provided by section 653 of the statutes supra, and if its value as thus ascertained shall be found to exceed the amount of the note, principal and interest due appellant from the insured, the sum left after deducting the amount of such indebtedness, he will be entitled to receive, in money, or, if he so elects, in paid up insurance of like tenor as the old policy, the amount of the new policy to bear the same ratio to the amount of the old policy as the sum so left bears to the total net value of the old policy. If, however, the insured

does not elect to take the paid-up insurance, but accepts in money what, if anything, is found to be due him, the court should decree the cancellation of the policy. If in adjusting the rights of the parties, as above directed, it shall be found that the value of the policy is not greater than the debt of the insured, the policy should still be canceled.

For the reasons indicated, the judgment is reversed, and cause. remanded with directions to the lower court to overrule the demurrer to the petition, and for further proceedings consistent with the opinion.

JUDGE PAYNTER dissents; JUDGE CANTRILL not sitting.

EXTENDED OPINION BY JUDGE O'REAR, November 21, 1906, on petition for rehearing.

The opinion of the court directs the ascertainment of the cash surrender value of the policy as of the date when the loan from appellant became enforcible. The plan of getting at the amount of this cash surrender value is adopted from the one provided by the legislature in estimating the value of the reserve of life insurance policies. The reserve is the net sum which has been contributed by the policy holder, out of the employment of which by the insurer the policy would be finally paid off. By section 653 of Ky. Statutes a method is provided for ascertaining the minimum value of reserves of life policies. By section 659 Ky. Statutes, it is provided how such reserves are to be valued as single premiums in purchasing paid up insurance. By reference to these two sections the method which the court adopts for finding the cash surrender value of the policy, is

found. Of course if there are "dividends" so-called, in which the policy was also entitled to participate in addition to the "reserve," that fact would have to be considered also in arriving at what would be a fair cash surrender value of the policy.