Case 68—ACTION BY COURTNEY D. JAGOE AGAINST THE AETNA LIFE INSURANCE COMPANY, OCT., 12.

## Jagoe v. Aetna Life Ins. Co.

Appeal from Jefferson Circuit Court (Chancery Branch, 1st Division.)

SHACKELFORD MILLER, Judge.

Judgment for Defendant. Plaintiff appeals. Affirmed.

1. Insurance—Life Policy—Stipulations—Extended Insurance.—A life policy stipulated for extended insurance on default of payment of premiums after the payment of two or more premiums provided there was no indebtedness to the company against the policy, and provided that if the premiums had been paid for two years or more a paid up policy might be applied for, and that, at the expiration of three years from the date of the policy, the premiums having been paid, the company would lend thereon an amount shown in a table. The insured paid four premiums, then borrowed from the insurer

the full amount specified in the table. He failed to pay any further premiums or the indebtedness. Held, that he was not entitled to extended insurance, he being entitled only to one or three options, of extended insurance, or a paid-up policy, or a loan.

2. Same.—A life policy stipulated for extended insurance in case of default in the payment of premiums after two or more premiums had been paid, provided no indebtedness against it existed, or for a paid-up policy, or for a loan thereon to an amount specified in a table. The insured paid four premiums and borrowed the amount shown by the table and executed therefor a note which stipulated that if it remained unpaid after maturity or if any premium should become due and unpaid the insurer might issue a paid-up policy in the amount provided for by the terms of the policy. Held, that the note was consistent with the terms of the policy within Ky. St. 1903, sec. 656, prohibiting an insurance company from making any contract of insurance other than is expressed in the policy.

3. Same—Contract—Statutes.—Ky. St. 1903, sec. 656, prohibiting an insurer from making any contract of insurance other than such as is expressed, in the policy, does not apply to a note given by an insured for money borrowed thereon pursuant to the provisions of the policy.

NUNN, J., dissenting.

BROWDER and BROWDER, for appellant.

1. The interest which appellant agreed to pay on the loan, and which was the maximum rate authorized by law, was the sole consideration of the loan. If to this interest, which was at the rate of 6 per cent. per annum and payable annually in advance, any other thing of value was added to be parted with by him, or if any disadvantage was to be suffered by him as a further consideration for the use of the money, such additional undertakings on his part were absolutely void, being usurious and expressly prohibited by statute.

2. Appellant had the undoubted right to require the company to lend him the $124.00 on the 8th day of March, 1904, and by executing his promissory note to the appellee for that sum, payable as to principal and interest at such times and places as the regulations of the company required, and secured by the pledge of his policy, he complied literally with the letter and spirit of the contract, and was entitled to the use of the money thus loaned until the maturity of his note, and was further the owner of what may be called paid-up, temporary or extended insurance for $1,500, for the period of time expiring July 20, 1910.

3. When appellant executed the loan agreement on March 8, 1904, he parted with valuable rights, without receiving in return any benefit whatever on account thereof. That agreement was and is entirely without consideration. It is a most inequitable, unjust, unfair and unconscionable transaction. It involves by its very terms the infliction of a penalty, and the forfeiture of a valuable right, without conferring any new benefit or bestowing any advantage upon the assured as the price of a sacrifice.

4. We submit that the averments of the second paragraph of the answer do not present a meritorious or valid defence, and that the chancellor erred in overrulling appellant's demurrer thereto.

### CASES CITED.

(115 Ky. 681, Druey's Adm'x v. New York Life Ins. Co. Ky. Statutes, sec. 460; Ky. Statutes, sec. 656.)

THUM & CLARK, for appellee.

1. When the insured ceases to pay premiums the policy lapses and becomes void save to the extent of the agreed surrender values, options or privileges, and such lapse of the policy is not a forfeiture. (St. Louis Mut. Life Ins. Co. v. Grigsby, 10 Bush, 310; Crutchfield v. Union Central Life Ins. Co., 113 Ky. 53.

2. It is a reasonable regulation to provide in a policy or in a loan note that where there is indebtedness upon a policy, then no extended insurance can be granted, but only the equivalent privileges option or surrender value known as a paid-up policy, otherwise the insured might use up his policy value, in the extended insurance, default upon all his premiums, not pay his indebtedness, and leave nothing upon which the lien to secure his loan could be foreclosed or out of which it could be paid.

3. "Indebtedness is an actual liability either to pay then or at a future time." Bouvier's Dictionary and authorities cited therein.

4. An election brought about by failure to pay premium and an agreement it shall come to pass is a default in payment of premiums shall occur, is not an enforced election in the meaning of the law and constitutes no forfeiture or penalty. In this respect it differs from an election which is coerced for default in the payment of a loan. Elections brought about by default in the payment of a premium, as in this case, have been frequently upheld by our courts. (New York Life Ins. Co. v. Meinken's Adm'r. 25 Ky. Law Rep. 2113; Winchell v. John Hancock Life Ins. Co. 8 Ins. Law J. 652; Knapp v. Homeopath Mut. Life Ins. Co. 117 U. S. 44; Douglass v. Knickerbocker Life Ins. Co. 83 N. Y.

492; Mut. Ben. Life Ins. Co., v. Harvey, 25 R. 1192; Mut. Ben. Life Ins. Co. v. First National Bank, 115 Ky. 774, 25 R. 178.)

5.  In this case, the settlement between appellant and the insurance company was in exact accordance with the loan note or agreement. He borrowed money on the policy almost equivalent to its value. He defaulted in subsequent premiums. The company notified him that his policy had lapsed for failure to pay a premium and that the value of his policy had been applied upon his loan in accordance with the agreement, and also in accordance with the agreement, an election had been made in favor of a paid-up policy in such a sum as the balance remaining out of the value of his policy would purchase as a single premium, which in this case turned out to be the policy of $91.00. All this was done before the death of the insured, no objection was ever made by the insured, everything was done in accordance with the agreements between the parties.

OPINION BY JOHN D. CARROLL, COMMISSIONER—Affirming.

On the 3a day of May, 1900, the appellee issued to M. H. Jagoe a policy of insurance for $1,500 payable to appellant.  He paid the first premium of $69.89, and on the 3d day of May, 1901, 1902, and 1903, paid the annual premium.  He failed to pay the premium which became due May 3, 1904, and on September 6, 1904, died.  The policy issued to him provides in section 3 that "when the premiums on this policy have been duly paid for two years or more, and default thereof occurs in the payment of any premium, this policy shall cease as to the right to pay further premiums; but shall, if there is no indebtedness to the company against it, continue in force as temporary life insurance for the full amount during the time specified in the following table A, at the expiration of which time this policy shall wholly cease and be void. Should the death of the insured occur within three years from the first default in the payment of premiums, and while this policy is in force for the full amount, there shall be deducted from the amounts otherwise due the premiums that would have been

paid had there been no default in the payment of premiums, with interest thereon.'' It further provided that if the premiums have been paid for two years or more, and the policy be surrendered to the company, and a paid-up policy applied for within three months, a participating stock policy would be issued for the amount stated in table B. And in another clause it provided that at the expiration of three years from the date of this policy, the premiums having been paid, the company would lend upon the same the amount shown in tabe C. There is a further provision as to the cash surrender value of the policy, but this did not become effective until five premiums had been paid. It further provided that ''any indebtedness to the company on account of this policy shall first be deducted, provided that the title to the policy is unincumbered and that loan or surrender papers are first executed under such regulations as are prescribed by the company.'' On March 8, 1904, M. H. Jagoe and appellant borrowed from appellee $124. The note executed to it for this sum provided that they acknowledged ''the amount of this note, with any interest that may accrue thereon, to be an indebtedness to said Aetna Iife Insurance Company on account of policy 288,848, issued by said company on the life of M. H. Jagoe, which policy, with all right, title and interest therein, and all benefit and advantages to be derived therefrom, is hereby assigned to and deposited with said company as security; and further agree that if this note shall remain unpaid sixty days after it becomes due, or if any premium under said policy shall become due and unpaid for sixty days or more, said company is hereby authorized to issue a paid-up policy in the amount provided for by the terms of said original policy, after deducting therefrom such a proportion as the indebtedness on account of the original policy bears to the net single premium for said paid-up policy.'' At the time of his

death, Jagoe was in default in the payment of the premium due May 3, 1904, and in the payment of the note. On August 22, 1904, appellee wrote to M. F. Jagoe, informing him that the policy had lapsed for nonpayment of premium due on the 3d day of May, 1904; and that because of the indebtedness to the company under the policy there would be no extension of the insurance; and that he was only entitled to a paid-up policy for $91, which was tendered to him upon the execution of proper receipts. It does not appear that this offer was accepted by Jagoe, and after his death the appellee offered to pay to the beneficiary the amount specified in the paid-up policy, which she declined to accept, and brought this action against the appellee to recover from it the sum of $1,500, less the amount of the note and the premium that was due on May 3, 1904. If Jagoe had not borrowed from the company in March, 1904, the sum mentioned, the premiums theretofore paid on the policy would have carried the full amount of the insurance under the option in table A for a period of something more than six years form May 3, 1904, without the payment by him of any further premium.

It is the contention of the appellant that M. H. Jagoe, when he executed to it the note mentioned, was entitled to what may be termed paid-up temporary insurance for $1,500, which would continue in force until July, 1910, without the payment of any additional premium, and that he also had the right under his contract of insurance to demand of the company a loan on its policy of the amount specified in table C, upon the execution by him of proper loan papers; that the company could not, in the loan papers, insert stipulations not in the policy that operated to forfeit the insurance he was entitled to if he failed to comply with the obligations of the note; and that Jagoe, having died within the term of his extended insurance, and while the same, according to the contract of in-

surance, was in force, has a right to exact from the company the full amount of the insurance less the amount of the note and premium due. Appellee insists that on March 8, 1904, Jagoe, under the terms of the policy, had tendered to him three options, either of which he might elect to receive the benefit of, that is to say ,if he declined to pay the primium due in May, 1904, he had the right to extended insurance for the full amount of $1,500 for the term of six years without the payment of additional premiums as provided in table A, or the right to a paid-up policy for the amounts specified in table B; or the right to obtain a loan for the amount specified in table C; and that, having before him these several options, he could exercise his own pleasure as to which of them he would accept, but he could not accept or take advantage of but one of them; and that, having elected to avail himself of the right to obtain a loan in the amount specified in table C, he surrendered his right to retain the benefit of or avail himself of the advantage of the options specified in tables A or B. Forfeitures are looked on with disfavor by the law, and this court has been as reluctant as any court in the country to enforce them. N. Y. Life Ins. Co. v. Curry, 115 Ky. 100, 24 Ky. L. R. 1930, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep. 297; Montgomery v. Mutual Life Ins. Co., 14 Bush, 51; Mutual Life Ins. Co. v. Twyman, 122 Ky. 513, 92 S. W. 335, 28 Ky. Law Rep. 1153.

But the question of forfeiture is not presented in this case. A forfeiture is a penalty for doing or omitting to do a certain required act, and the appellee has not attempted to impose upon the insured any penalty, nor are the provisions of the contract harsh, unreasonable, or oppressive. Here the insured had the right to elect which of the three options he would accept. Generally speaking, where a forfeiture is attempted there is no election, and there is a wide

difference between a regulation established as a matter of business, and a forfeiture imposed as a penalty upon a person in default. In this case the company provided in its contract of insurance that certain regulations prescribed by it should be performed by the insured, leaving to him the right to determine whether he would perform them or not. It advanced to the insured all that he was entitled to under the contract of insurance, and took as security for the note the policy, which at that time had no cash surrender value as the cash surrender value of the policy did not attach until five premiums had been paid. When the note was executed the insured was not in default in the payment of any premium, and therefore under the contract of insurance, was not entitled at that time to any extended insurance, because his right to extended insurance only became effective when he was in default in the payment of a premium. There is no provision in this policy for the deduction of any indebtedness from extended insurance, as the policy provides that when there is an indebtedness there can be no extended insurance. It is stated in the contract of insurance in Section 3, that "if there is no indebtedness to the company against it, the policy shall continue in force for the full amount during the time specified in table A," and at the head of the tables we find this: "The figures given in the table are based on the assumption that there is no indebtedness to the company against the policy," and that loan or surrender papers are to be executed under such regulations as may be prescribed by the company. If the view advanced by counsel for appellant was accepted as correct, it would follow that the insured would have the unreasonable advantage of having the full amount of insurance in force for a period of six years, at the same time being indebted to the company in the full amount of the loan value of his policy without the payment of either premiums

on the policy or interest on his note during the period
for which the extended insurance would run.   To put
it in another way; if he had outlived the period of ex-
tended insurance, the policy that the company
accepted as security for the note would have lapsed
entirely, and be of no value, and consequently the com-
pany would have no security for the money advanced
on it if the insured was insolvent, and yet the insured
during this time would have had in his pocket practi-
cally the full value of his policy, and on his life in-
surance for the full amount of policy.

Counsel further contend that he was entitled to
extended insurance at the time the loan was made,
in the face of the provision in the policy:   First, that
no extended insurance would be granted until there
was a default in the payment of premium; second,
that no extended insurance would be granted when
there was any indebtedness against the policy; and
if their theory is correct, it would follow that the in-
sured was entitled to extended insurance for six years,
and at any time during that period—even in the last
month of it—he was entitled to demand from the com-
pany the full loan value of his policy.   Policies of in-
surance, like other contracts, should be given a fair
construction, and one in harmony with the meaning
and intention of the contract when it is plain and un-
ambiguous, and neither unreasonable nor against pub-
lic policy, and it cannot be said that the contract upon
which appellee relies is either doubtful in meaning or
against public policy.   In Dreury's Adm'x v. N. Y.
Life Ins. Co., 115 Ky. 681, 25 Ky. L. R. 68, 74 S. W.
663, 61 L. R. A. 714, 103 Am. St. Rep. 351, relied on by
appellant, Dreury, after having paid three premiums,
executed a note for the fourth premium, the note stip-
ulating that unless it was paid when due the policy
and its accumulations should be forfeited except as to
the right to the surrender value of a paid-up policy,
and that in the settlement of the claim or benefit under

the policy the amount owing should be deducted from the sum otherwise payable by the company. The court in the construction of the contract of insurance, and stipulations of the note, held that, under a reasonable construction, the failure to pay the note only forfeited the right of the insured to participate in certain benefits otherwise allowed by the policy, but did not surrender his right to extended insurance for the term earned by the premiums paid. In the Dreury case, as in this, the question was the proper construction of the policy, and the language of the policy here involved being free from uncertainty, we have found no difficulty in giving it a construction fair and reasonable to the parties concerned, nor do we doubt that under the contract the insured was bound by his election and must stand by the terms imposed when he made it. There is a marked difference between the right to elect between privileges coupled with a reasonable provision that when the election is made the conditions imposed by the contract of election shall be performed, and a forfeiture, that is in the nature of a penalty, imposed for the non-payment of money. N. Y. Life Ins. Co. v. Curry, 115 Ky. 100, 24 Ky. L. R. 1930, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep. 297. While forfeitures have been condemned, or very reluctantly upheld, contracts involving the validity of elections with conditions imposed similar to those in this case have been approved and sustained. Mutual Benefit Ass'n v. Harvey, 117 Ky. 834, 79 S. W. 218, 25 Ky. Law Rep. 1992; N. Y. Life Ins. Co. v. Meinkin, 80 S. W. 175, 25 Ky. Law Rep. 2113; Mutual Benefit Life Ins. Co. v. First National Bank, 74 S. W. 1066, 25 Ky. Law Rep. 172.

It is further urged that the stipulations in the note executed by the insured are inconsistent with or in derogation of the terms of the original contract of insurance, and that therefore under section 656 of the Kentucky Statutes of 1903 the conditions in the note

must yield to the terms of the policy. The stipulations in the note are not inconsistent with the terms of the policy, but merely elaborate its meaning and carry out its purpose; and aside from this, the statute does not apply to the note. Fidelity Mutual Life Ins. Co. v. Price, 117 Ky. 25, 77 S. W. 384, 25 Ky. Law Rep. 1148.

The judgment of the lower court is affirmed.

NUNN, J., dissents.