# New York Life Ins. Co. *v.* Ware.

(Division B.  Nov. 5, 1934).

[157 So. 359.  No. 31402.]

(Division B.   Dec. 3, 1934.)

[157 So. 894.  No. 31402.]

Leathers & Greaves, of Gulfport, for appellant.

Ford, White & Morse, of Gulfport, for appellee.

Ethridge, P. J., delivered the opinion of the court.

Appellee, Mrs. Fannie D. Ware, was plaintiff in the court below and brought suit against the appellant on a twenty-year pay policy for two thousand dollars issued in 1900 upon the life of George L. Ware, husband of appellee. This policy had a loan value and a cash surrender value, and at the date the said George L. Ware obtained a loan on it, said policy had a loan value of one thousand four hundred twenty-four dollars. The policy had a provision that the insured might, at any time during the

life of the policy, provided it has not been assigned, change the beneficiary by written notice to the company. Said policy had been in force twenty-four years when the loan was procured by George L. Ware. The application for the loan was not signed by Fannie D. Ware, the beneficiary in the policy, but the application for a change of beneficiary was made December 13th, prior to the application for the loan on January 9th, and by the change in beneficiary the policy was payable to the executor or administrator of George L. Ware; but immediately upon securing the loan the policy was changed back to Fannie D. Ware as beneficiary. Interest due on said loan was paid from January 9 to January 29, 1925, and on that date the annual interest at five per cent. of the amount of the loan was due and payable. This advance interest was not paid, and under the terms of the policy, the whole policy and loan became due and payable, and the loan was secured by a lien upon the policy.

On October 3, 1925, the Insurance Company wrote to George L. Ware the following letter:

"Mr. George L. Ware,

"1520 Hewes Ave.,

"Gulfport, Miss.

"Dear Sir:

"Re. Policy No. 3,021,567

"Pursuant to a loan agreement executed on the 9th day of January, 1925, a cash loan of one thousand four hundred twenty-four dollars was made upon the security of the value of this policy on the life of George L. Ware. The interest due on said policy on the 29th day of January, 1925, not having been paid, the principal of said indebtedness became due, and has been settled according to the terms of the policy and the loan agreement, and the policy has no further value.

"Yours truly, John C. McCall."

George L. Ware died on August 2, 1931, without having repaid the loan on the policy and the interest thereon,

or without taking, so far as the record shows, any further action in reference thereto, after receipt of the letter notifying him that the policy had been applied to the payment of his debt, according to the terms of the policy and the loan agreement, and that it had no further value.

It will be noted from this letter to George L. Ware that the words ''premium and'' were struck out before the word ''interest,'' all showing that the interest on the loan had not been paid, and that the policy was canceled. Of course, no premiums were due on the policy, as it had become a paid-up policy having been in existence twenty years.

Shortly prior to the death of George L. Ware, an attorney, knowing that Ware was desperately ill, undertook to inquire into the status of all insurance held by him, and said attorney wrote a letter to the Mobile branch office in reference to this policy, among others, and received the following letter from C. L. Sullivan, cashier: ''We are in receipt of communication from our Home office advising us that the above numbered policy (on the life of George L. Ware) lapsed for nonpayment of premium due January 29, 1925. It was charged with a loan of one thousand four hundred twenty-four dollars and was settled in accordance with the terms of the policy and the loan agreement and is without further value.''

It will be noted from this letter that he was advised that the policy had lapsed for nonpayment of premiums on January 29, 1925. This letter was admitted over objections.

Suit was brought in the county court, which rendered judgment in favor of the plaintiff, Fannie D. Ware, for the difference between one thousand four hundred twenty-four dollars and two thousand dollars, the face of the policy, to-wit, six hundred one dollars and ninety-two cents, from which judgment an appeal was prosecuted to the circuit court and was there affirmed, and from the last-named judgment this appeal is prosecuted.

It will be seen that George L. Ware, on January 9, 1925, secured a loan for the full loan value of the policy, pledging the policy as security therefor, and was to pay interest on January 29, 1925, in advance, under the terms of the policy, and made default, whereupon the loan and interest all became due and payable. He was given indulgence from that date until October 3, 1925, when he was notified that the company had applied the policy to the payment of the debt, which debt, was slightly in excess of the full value of the policy as of that date, and that said policy was canceled. He appears to have taken no action in reference to it for almost six years, when he died, without having paid or tendered anything. The full face value of the policy at death was two thousand dollars. No one could say how long it would be before he died, and before the policy became a matured obligation. Therefore, the only value the policy had at the time was the loan value and the cash surrender value, which were the same. It was error for the court to assume that, under the circumstances of this case, the policy continued in force. The policy having been changed as to the beneficiary, which change was available to the insured, and the change having been made on the application of the insured, it was not necessary for Fannie D. Ware to sign the application for a loan. Williams v. Penn Mutual Life Ins. Co., 160 Miss. 408, 133 So. 649; Bank of Belzoni v. Hodges, 132 Miss. 238, 96 So. 97.

It is manifest that the letter from the Mobile branch of the company, in referring to premiums, was a clerical error, and in addition there is no showing as to the authority of this agent to bind the company in reference thereto.

The deceased, George L. Ware, knew that the policy had been applied to his indebtedness, and made no objection thereto. Suppose he had lived twenty years, and the interest on his loan had accumulated; it would have exceeded the face of the policy. This shows that it clear-

ly could not have been the contemplation of the parties to require the Insurance Company to pay the difference between the amount due on the face of the policy, and the amount due from the insured, principal and interest. It was clearly the meaning of the policy that the Insurance Company would only be due to pay the difference between the loan and interest, and the surrender value of the policy, if it should apply the policy to satisfy the debt, and there was none to apply.

Here the debt was slightly in excess of the loan and surrender value, and nothing was due under the policy to the insured, when its loan value was applied to liquidate the debt.

The judgment will be reversed and the cause dismissed. Reversed and dismissed.

### ON SUGGESTION OF ERROR.

**Ethridge, P. J.**, delivered the opinion of the court on suggestion of error.

A judgment in favor of Mrs. Fannie D. Ware, the appellee here, was reversed and dismissed on November 5, 1934, and a suggestion has been filed here. As is the universal custom, the suggestion of error was referred to another judge than the one who wrote the opinion, studied by him, and brought into conference and discussed by the judges. We have decided to adhere to the former conclusion, but will respond to the suggestion of error.

It is suggested therein that this case is identical and on all fours with the case of New York Life Insurance Company v. Curry & Bros., 115 Ky. 100, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep., 297, and that the decision therein should control in the present case, and should be followed unless the court should find that it is unsound in its reasoning. In the present case, the full

loan value of the policy was borrowed, and that the interest on said loan was payable in advance at the next anniversary date of the policy, and, if not paid, that the company could declare the whole debt due. The interest so payable in advance, with the principal, was in excess of the loan and surrender value of the policy. In the case of New York Life Insurance Co. v. Curry & Bros., supra, at the time the policy was there applied to the debt and canceled by the company, there was twelve dollars and forty-seven cents more than the principal and interest owing the appellant when the default occurred, and the loan agreement there contained the following: "It is agreed that interest at the rate of five (5) per cent. per annum shall be paid upon said loan at the anniversary of the insurance next succeeding, and annually thereafter, at the office of said party of the first part. It is agreed that although it is not intended that said party of the first part shall demand payment of said loan until the first day of August, 1909, on which date said loan shall become and be due and payable, or until the death of the party whose life is insured under said policy, said party of the first part reserves the right to demand repayment provided said interest is not duly paid." It was further provided as follows: "It is agreed that in event of the default of any payment of said interest or of said loan or of any premium on said policy for thirty days after they shall respectively become due said policy shall be deemed to be and shall be in effect at the option of said party of the first part, surrendered to said party of the first part at the customary cash surrender value then allowed by said party of the first part for the surrender of policies of this class, said party of the first part in that case being liable to said party of the second part for the return of the balance only of said cash surrender value after deducting said loan and interest and any expenses incurred thereon." And further it is provided as follows: "It is agreed that said party of the second part

has deposited said policy and its accumulations with said party of the first part as collateral security for said loan, on the terms and conditions of this agreement, and covenants and agrees to and with said party of the first part to abide by and perform all and singular the stipulations and agreement contained in this agreement. . . . It is agreed that all the conditions, limitations and requirements of said policy except as herein expressly modified, remain in full force.''

The Kentucky court held that the above-quoted provisions by which the policy was to be applied to the payment of the debt were contrary to the public policy and void.

The contract involved in the case at bar is not a Kentucky contract, and is not governed by the laws of that state. So the decision is one merely of another state, and is not binding upon the courts of this state. Such decisions are studied and given respect and such consideration as they may be entitled to. In Black's Law of Judicial Precedent, p. 400, sec. 122, it is said that: ''On questions of general jurisprudence and the construction of domestic statutes, decisions made under a similar legal system prevailing in another state may be cited as persuasive authority, respected for their reasoning and judgment, and followed if approved, but they are not binding as precedents. The rule or principle of stare decisis is properly applicable only as between the several courts composing the same judicial system, and strictly speaking, only in instances in where the same court which rendered a previous decision is called upon to abide by it or repudiate it. The degree of force or authority to be accorded to a decision of the chief court of one state, when cited to the highest court of another state is not measured by this doctrine. There are indeed, as already noted in these pages, exceptional cases in which the courts of one state will follow the decisions of the court of last resort in another state, without inquiry into their

soundness, where the question concerns the construction of a foreign statute or of a statute adopted from the legislation of another state, or the application of the local law of a foreign jurisdiction. But, aside from these special cases, and generally where the question to be decided is one of general jurisprudence or concerns the lex fori or the interpretation of domestic statutes, decisions rendered in another state are proper to be cited if in point, and may be entitled to respectful consideration if well reasoned, promotive of justice, and well supported by the general current of authority, but they are not technically of force as precedents. Such decisions may be followed, if the court hearing the case approves their reasoning and conclusions. But it is at perfect liberty to disregard them, and is not constrained in this respect by either the principles of comity, or the constitution and laws of the United States." See, also, further comment on pages 401 to 410.

We think there is a distinction between the case of New York Life Ins. Co. v. Curry & Bros., supra, and the case at bar, in this, that in the Curry case the surrender value of the policy was not exhausted by the loan and interest, whereas, in the case at bar, the full loan value had been borrowed, and the loan and interest exceeded the surrender value of the policy by a small amount as stated in the original opinion.

But, if this distinction is not sufficient to differentiate the two cases, we would still decline to follow the Kentucky court, and see no reason why a contract as there involved would not be valid in this state.

Loan and surrender values in life insurance policies are valuable considerations, and influence persons to take such contracts. In times of financial stress and storm, they are frequently savers, and by means of them money can be borrowed to meet demands that would otherwise, in many cases, not be met.

As we have said in numerous cases, parties have a right

to make contracts where not contrary to law or public policy. We see no reason why a person should not pledge his policy of insurance as collateral for a debt either with the company issuing the policy, or with some other person, and provide in the contract that, if the debt so contracted for is not paid when due, the policy may be applied to satisfy same.

It would be difficult to secure a loan upon a policy that would require an insurance company to permit a debt to accumulate in excess of the policy, and to carry such debt until the policyholder should die, in case the insurance, as here, be a paid-up policy. Berry v. Lamar Life Insurance Co., 165 Miss. 405, 142 So. 445, 145 So. 887. We think the terms of the policy authorized the company to apply the surrender value to the satisfaction of the loan.

It is also suggested in the suggestion of error that the original opinion, in its reference to the letter received from a branch office at Mobile, Alabama, was unsound, and that such a statement ought to be treated as an estoppel. We are unable to agree with such contention. The policy provides that only the president, vice-president, actuary, or secretary, has the power to make or modify any contract of insurance, or to extend the time for paying any premium, and the company shall not be bound by any promise or representation given by any person other than the above, and, as we said in the original opinion, the letter referred to was evidently a clerical error; the surrender value of the policy was applied to the payment of the debt, and the insured was notified thereof. The word "premium" was in the letter written by the branch office, but we do not think, under any circumstances of the case, or any provision of the policy, it would operate as an estoppel, and there is no foundation for estoppel in that regard.

The other arguments in the suggestion of error need not be responded to, and it will be overruled.

Suggestion of error overruled.